THE GAS LIGHT AND COKE COMPANY. *v.* CITY OF NEW ALBANY.

[No. 18,873. Filed January 8, 1901. Rehearing denied April 2; 1901.]

MUNICIPAL CORPORATIONS.—*Ordinance.*—*Franchise.*—*Contract with Gas Company.*—An ordinance granting a gas company a franchise to occupy the streets for the purpose of furnishing the city and its inhabitants with gas provided that the company should furnish "good, pure gas for all the public lamps of the city, and light, ex-

Gas Light, etc., Co. *v.* City of New Albany.

tinguish and keep the same in good repair" at a fixed price per annum for each lamp. It was further provided "that the common council of said city shall have the right at all times to regulate the times of lighting and extinguishing the street lamps, and of determining the quantity of gas to be consumed by said city" *Held,* that there was no express contract by the city, under the ordinance to take gas in any quantity, and that an action for damages could not be maintained against the city for failure to take gas. *pp. 407-411.*

MUNICIPAL CORPORATIONS.—*Ordinance.—Franchise.—Gas Companies.* —A city council adopted an ordinance granting a franchise to a gas company for a term of twenty years with the provision that at the expiration of twenty years the city would then either purchase the gas plant at a reasonable value thereof at that time or grant the company the same rights and privileges enjoyed under the old ordinance for another term of twenty years. At the end of seventeen years an ordinance was passed extending the franchise, with slight modifications, for a period of twenty-three years. *Held,* that the latter ordinance was not authorized by the old one, and that the same was an original, substantive contract in violation of the act of 1883 (Acts 1883, p. 85, §4301 Burns 1894), limiting such contracts to ten years. *pp. 411-413.*

SAME.—*Ordinance.—Gas Companies.—Contract to Light Streets.— Ultra Vires.*—A contract entered into by a city with a gas company to light the streets for a period of twenty-three years in violation of the provision of §4301 Burns 1894, is not valid for the authorized period of ten years, but is *ultra vires,* and wholly void. *pp. 413-415.*

From the Clark Circuit Court. *Affirmed.*

*H. M. Dowling,* for appellant.

*G. H. Hester* and *M. Z. Stannard,* for appellee.

HADLEY, J.—On March 22, 1870, the city of New Albany, by an ordinance, granted the Gas Light & Coke Company a franchise to occupy the streets for the purpose of furnishing the city and its inhabitants with gas, for the term of twenty years from and after April 7, 1871. The ordinance provided that the gas company should furnish good, pure gas for all the public lamps of the city, and light, extinguish, and keep the same in good repair for the price of $18 per annum for each lamp—the posts and lamps to be furnished by the city—and that the charge for gas furnished the city and its inhabitants should not exceed $3 for each

1,000 cubic feet. "Provided * * * that the common council of said city shall have the right at all times to regulate the time of lighting and extinguishing of the street lamps and of determining the quantity of gas to be consumed by said city." Section nine was as follows: "At the expiration of the said term of twenty years from and after the said 7th day of April, 1871, the common council of said city will either purchase from the said gas company * * * their gas works, pipes, meters and other property at the fair and reasonable value thereof, *at that time,* or grant them the same right and privileges as contained in this ordinance for another term of not less than twenty years, but subject, however, to such other reasonable conditions, limitations, and restrictions as the interest of said city, and of her citizens, may *at that time* require."

The gas company accepted the terms of the ordinance, and expended a large sum of money in the purchase and construction of its plant. Both the parties proceeded to act under the ordinance contract. On March 19, 1888, the complaint alleges that while the contract aforesaid was in full force and yet had three years to run, the city, by its common council, by a supplemental ordinance, in consideration of the reduction of the price of gas to consumers, including the city (except as to the public lamps), and for the purpose of carrying out its agreement to extend said contract, in lieu of purchasing said gas plant, proposed and agreed to and with the plaintiff (gas company) that all the rights and privileges, duties and obligations held, enjoyed, and owing by the said gas company, under and by virtue of the said ordinance, passed March 22, 1870, and under and by virtue of the said contract and agreement then subsisting between said company and the city, subject to the modifications in said ordinance of March 19, 1888, should be, and the same were, extended and continued in force for the term of twenty-three years from and after said 7th day of April, 1888. The first section of the ordinance of March

19, 1888, provided for the extension of the company's franchise for the term of twenty-three years from April 7, 1888, with all the rights and privileges, etc., enjoyed and owing by the gas company under the ordinance of 1870, as alleged in that part of the complaint above quoted.    The second section provided for the price of gas to consumers to be from $2.10 to $1.50 per 1,000 cubic feet, according to amount consumed and time of payment, the city to have the gas received by meter measurement at the minimum price, and to pay $18 per annum for each public lamp.    By subsequent sections it was provided that the "city agrees to keep in service all public lamps heretofore maintained" and to erect and keep in service three additional lamps for every 260 feet of gas main extension, and prescribing the times when the same should be lighted and extinguished.

The gas company accepted the terms of the ordinance of 1888, and both the company and city proceeded to act under it; and the company has expended a large sum of money in laying mains and in extending its facilities for manufacturing and furnishing gas, and has, since March, 1888, furnished gas to the city and all other consumers for a less price than it was permitted to charge under the ordinance of 1870.    Prior to January 1, 1892, the city had established eighty-four public lamps in the city, which were embraced within said agreement.    Since January 1, 1892, the gas company has been prepared, ready, and willing to supply all the public lamps with gas under the terms of the ordinance and agreement, but the city has, since said last date, wrongfully refused to use the public lamps, and prevented the company from lighting the same, and refused to receive gas and pay for the same, to the damage of the company. To a complaint alleging the foregoing, the court sustained a demurrer for insufficiency of facts, which action of the court presents the only question we are called upon to decide.

To exhibit an action *ex contractu* for damages, appellant, as plaintiff, must show the existence of a valid contract with

appellee that has been broken; that is, a contract which not only imposes upon appellee the obligation to receive gas from appellant, but receive it in such definite quantity as will make the damages for refusal to receive ascertainable with reasonable certainty. 1 Sedgwick on Damages (8th ed.) §170. We look in vain to the provisions of the ordinance of March 22, 1870, for any semblance of a stipulation on behalf of the city to maintain any number of public lamps, or to take any quantity of the company's gas. The only references to the subject in the ordinance of 1870 are as follows: The right is granted the company to lay its pipes through the streets of the city "for the conveyance of gas in and through the city for the use of said city and its inhabitants." The company shall furnish "good, pure gas for all the public lamps of the city, and light, extinguish, and keep the same in good repair" at a fixed price per annum for each lamp. "The price at which said company shall furnish the city and its inhabitants with gas shall not exceed" a named price. "Provided the city orders shall be received at par in payment for all gas furnished the city by said company, and that the common council of said city shall have the right at all times to regulate the times of lighting and extinguishing the street lamps, and of determining the quantity of gas to be consumed by said city." It is manifest from these provisions that the city, with respect to its purchase of gas, assumed no absolute obligation, but reserved to itself the rights of an inhabitant of the city to take or not take gas as its common council might, from time to time, determine. This is made clear by the express proviso that the council shall at all times determine the quantity of gas to be consumed by the city. The right to determine, at all times, the quantity to be consumed by the city was a continuing right incident to and coextensive with the duration of the company's franchise, and if in its exercise the common council determined to consume an infinitesimal quantity, or no gas at all, we do not perceive the

principle upon which the city may be made answerable in damages. Surely there is no express contract by the city, under the ordinance of 1870, to take gas in any quantity, and we are not at liberty to imply one and arbitrarily fix a basis for measurable damages.

We must then look exclusively to the ordinance of March 19, 1888, for such a contract on behalf of the city as will support the complaint. Here we find it expressly stipulated that the city shall keep in service all public lamps theretofore maintained, and to erect and keep in service three additional lamps for every 260 feet of gas main extension under the ordinance, which number of lamps so maintained and erected prior to January 1, 1892, is alleged to be eighty-four. At this point, however, we are confronted with the contention of appellee that the city had no authority of law to pass the ordinance of 1888. The first section of the act of March 3, 1883 (Acts 1883, p. 85), §4301 Burns 1894, in force March 19, 1888, reads as follows: "That the common council of any city in this State, incorporated either under the general act for the incorporation of cities, or under a special charter, and the board of trustees of all incorporated towns of this State shall have the power to light the streets, alleys and other public places of such city and town with the electric light, or other form of light, and to contract with any individual or corporation for lighting such streets, alleys and other public places with the electric light, or other forms of light, on such terms, and for such times, not exceeding ten years, as may be agreed upon."

Under the view we have taken of the case, it is not necessary that we decide (1) whether the franchise granted the gas company, under the ordinance of 1870, was for twenty years or for a forty years' term with an option engrafted upon it to be exercised at the end of twenty years, or (2) whether an exclusive franchise for gas lighting for either twenty or forty years is void on the ground of public im-

policy. The more immediate question is, does the ordinance of 1888 come within the operation of the statute of 1883? If the ordinance of 1888 was an original, substantive, contract, then the question must be answered in the affirmative. And it was such a contract unless its authorization is to be found in the ordinance of 1870. The only pretended authority is drawn from section nine above quoted. Its substance is as follows: At the expiration of twenty years from April 7, 1871, the city will then either purchase the gas plant, at a reasonable value thereof *at that time,* or grant the company the same rights and privileges enjoyed under the ordinance of 1870 for another term of twenty years, subject to such conditions, limitations, and restrictions as the interests of the city and her citizens may *at that time* require. The contract made by the councilmen in office in 1870 was that the right and obligation of purchase or renewal should be ruled by the conditions as they should be found to exist at the end of twenty years, and at no other time. The reasonable value of the plant after twenty years of use, the ability of the city, at that time, to provide the purchase price, the cost of producing gas at that time, the will of the inhabitants and "interests of the city", as the experience of twenty years might formulate, were all subjects of importance and impossible of forecast, that might well and wisely be referred to the judgment of the governing body of the city at a particular date, rather than left to the action of any council that might, from a political or social happening, be found willing to accede to a purchase of the plant or an extension of the franchise on terms most favorable to the gas company. Anyhow, the contract reads that the city shall, at the end of twenty years, exercise its option. No other date is possible within the terms of the contract. If the option may be exercised at the end of seventeen years, it may for the same reason be exercised at the end of ten, or five, or one year for that matter. What we are here considering is not the power of a municipality to

change, annul, or even to extend the term of an existing contract before it expires, but whether in this case the change and extension sought to be accomplished were in virtue of the old contract of 1870, or a new and independent contract. But one answer seems possible. It is folly to say that the terms and stipulations of a contract can be superseded by other terms and stipulations unauthorized by the former, and wholly inconsistent therewith, without a new contract. Here the contract of extension in 1888, at the end of seventeen years, for a term of twenty-three years, was an affirmative departure from the contract of 1870—not in pursuance thereof—and the agreement of the city in 1888, to keep in service her eighty-four public lamps, was the assumption of an obligation never before resting upon it, and required by no former agreement, and was not an extension of the company's franchise "with the same rights and privileges" enjoyed under the ordinance of 1870. We therefore hold that the ordinance of 1888, so far as the same may be considered as a contract with the appellant for the lighting of the appellee city for the term of twenty-three years, must be governed by the act of 1883, *supra.*

We can not agree with appellant that the act of 1883 relates exclusively to electric lighting. In the enacting clause, and in every instance occurring in the act, composed of five sections, where the kind of light under consideration is described, the language used is, "electric light or other forms of light", except at the close of the third section where the words employed are, "electric or other light". This language is repeated six times in the act and removes every doubt of legislative intent.

But it is ably argued that if gas lighting contracts are within the inhibition of the act of 1883, the contract under consideration for the term of twenty-three years is not wholly invalid, but good for the term legally authorized. The statute reads that the common council may contract for lighting of the city for such term as may be agreed upon

not exceeding ten years. We recognize the rule contended for by appellant, and as clearly stated in *Consumers Oil Co.* v. *Nunnemaker,* 142 Ind. 560, 568, 51 Am. St. 193, as follows: "When a contract is or can be so separated in parts as to constitute two agreements, one illegal and the other legal, the latter may be enforced and the transaction *pro tanto* sustained. But it is otherwise where the contract in its nature is not divisible." But the rule is not available because not applicable to the facts of this case. The contract here with respect to duration involves but a single proposition, a single and specific term of twenty-three years, which from its indivisible nature must either stand or fall as an entirety. It is suggested that the statute, being a restriction upon the power of city officers to contract, is in derogation of the common law, and must therefore be strictly construed; and that in the absence from the statute of the words "void", "null and void", "absolutely void", to be found in numerous other statutes relating to the power of municipal officers, should be held to indicate the legislative intent to be that contracts for a greater period than ten years should be regarded as valid for the authorized period, and voidable only as to the excess. The answer to this is forcibly given in *City of Wellston* v. *Morgan,* 59 Ohio St. 147, 156, 52 N. E. 127, in these words: "This implies that the purpose of the law is only to prevent the enforcement of contracts made in violation of its terms, and not to prevent the making of such contracts. Now, the language of the statute is that the municipalities referred to shall have power to contract for light for any term not exceeding ten years. This implies, with as much force as if it had been expressly stated, that the municipality shall not have power to contract for any term longer than ten years, and the natural inference is, we think, that the purpose is to inhibit such contracts entirely, for the only certain way of insuring their non-enforcement is to prevent their attempted execution. This may not be effectually accomplished unless they

are held to be void." Besides, it is elementary that municipal officers have no powers beyond those expressly conferred by statute or necessarily implied to enable them to make effective the powers granted, or to protect the public welfare. Therefore, when they attempt an act that is beyond the limit of their power, the act has no official sanction, and is no more effectual than if performed by non-official persons. As a municipal act it is wholly void, and, being void, nothing of substance may flow from it. A reputable author, in reviewing the powers of municipal corporations to make contracts and in considering the particular question now before us, uses this language: "When a municipal council is authorized by statute to contract for a period not exceeding ten years, its contract for twenty years, or for an indefinite time, can not be sustained as a contract for ten years, but is entirely void." Beach on Con. §1148. See, also, 3 Cook on Corp. (4th ed.) §927; *Manhattan Trust Co.* v. *City of Dayton,* 59 Fed. 327, 335; 8 C. C. A. 140; *State* v. *Town of Harrison,* 46 N. J. L. 79, 85; *City of Somerset* v. *Smith* (Ky.), 49 S. W. 456.

Our conclusion is that appellee's ordinance of March 19, 1888, so far as it was attempted thereby to contract with appellant for lighting the streets and other public places of the city for a term of twenty-three years, was in violation of the act of 1883, and was therefore *ultra vires* and void. This result leaves the appellant without a contract in support of its complaint; hence, the demurrer thereto was properly sustained.

Judgment affirmed. Dowling, C. J., did not participate in this decision.