CITY OF FT. SCOTT, KAN., v. W. G. EADS BROKERAGE CO.

(Circuit Court of Appeals, Eighth Circuit. August 4, 1902.)

No. 1,711.

1. MUNICIPAL CORPORATIONS—POWERS LIMITED BY STATUTORY GRANT.

The powers of municipal corporations are limited to those expressly granted and those fairly implied therefrom or incidental thereto, and a reasonable doubt of the existence of a power is fatal to its being.

2. SAME—POWER—PRESCRIPTION OF MANNER OF EXERCISE NEGATIVES RIGHT TO USE OTHERWISE.

The prescription, by the statutes, under which a municipality is organized or acting, of the manner in which it shall exercise one of its powers, limits the right to exercise it to that method, and its use in any other way is ultra vires of the corporation, and void.

3. SAME—STATUTORY METHOD OF INVESTING SINKING FUNDS EXCLUSIVE.

When a municipal corporation of Kansas has a sinking fund in excess of $2,000 for investment in the purchase of its bonds, the statutes of that state require it to advertise for bids and to invest the fund in the bonds of those parties who offer them at the lowest price. Gen. St. Kan., 1899, §§ 6284, 6294. A city in such a situation made a contract with a brokerage company to repay it the amount it should expend in the purchase of the city's bonds, not exceeding their par value and 10 per cent. premium, and to pay the company for its services in addition more than 16 per cent. of the par value of the bonds it bought. Held, the statute prescribing the method of investing the sinking fund was exclusive, the contract with the brokerage company was ultra vires of the city and void, and a contract to pay the reasonable value of such services was void for the same reason.

4. SAME—ESTOPPEL FROM DENIAL OF LAWFUL EXERCISE OF ITS POWERS.

A municipal corporation, which has retained the benefits of a contract invalid not because it was beyond the scope of its powers but because in the making or performance of the agreement the power of the municipality was illegally exercised, may be estopped from denying the validity of the contract as against an innocent party, who has changed his position in reliance upon the action of the municipality. But no such estoppel can arise in favor of one who knowingly agrees to assist the municipality in the illegal exercise of its power.

5. EQUITABLE ESTOPPEL—MISREPRESENTATION AND IGNORANCE.

A false representation by one party of a material fact of which the other party is actually and permissively ignorant is essential to the existence of an equitable estoppel.

6. JUDGMENT NOTWITHSTANDING VERDICT.

Where the pleadings disclose the right of a party to a judgment in his favor, such a judgment may be entered by the court, under Gen. St. Kan. 1899, § 4675, notwithstanding the fact that an adverse verdict has been rendered.

7. CONTRACT OF PURCHASE VOID IF QUANTITY UNDETERMINABLE.

A contract for the purchase of personal property is void for want of consideration and mutuality if the quantity to be bought is conditioned by the will, wish, or want of one of the parties.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

This writ of error was sued out to reverse a judgment for $4,722 against the city of Ft. Scott and in favor of the W. G. Eads Brokerage Company, a corporation, for a breach of a contract. The judgment rests on a peremptory instruction to the jury based upon these facts: The city of Ft. Scott had a bonded debt of $234,000 and a sinking fund of about $45,000. The bonded

debt was drawing about 6 per cent. per annum, and the sinking fund only 1½ per cent. per annum. The city and the brokerage company supposed that none of the bonds of the city were redeemable until the expiration of 9¾ years from the time the contract was made, although the fact was that bonds to the amount of $20,000 were then payable upon call. Thereupon the brokerage company wrote to the city that it thought it possible that it might be able to buy bonds enough to at once apply the sinking fund, and that, if it was able to do this, it would charge the city one-half of the net saving resulting to it from the purchases. On September 25, 1899, the city accepted this proposition on the conditions that it would take from the brokerage company and pay for its bonds to the amount in par value of $40,000, that the premium on them should not exceed 10 per cent., that the compensation of the brokerage company should be paid in city warrants, that the interest on the bonds bought should be reckoned on the theory that they would mature 9¾ years from October 1, 1899, that the brokerage company should render a true account of the bonds it bought by means of canceled drafts and receipts which should show absolutely and definitely the purchase price of the bonds, and that the term of the contract should end on January 15, 1900. After this contract was made the brokerage company discovered the fact that bonds of the city to the amount of $20,000 were subject to call, prepared a notice calling them, caused the mayor and the clerk of the city to sign this notice, and published it in a daily newspaper. This notice stated that these bonds were called for payment at the Kansas state fiscal agency in the city of New York on January 1, 1900. The city sent the necessary funds to that agency to pay the bonds and the interest upon them, and these bonds were paid with these funds of the city, and were canceled. The brokerage company never bought any bonds of the city under the contract. On December 19, 1899, the term of the contract was extended to February 15, 1900. The brokerage company incurred traveling expenses of its officers and agents, and rendered services in searching out the holders of the city bonds and endeavoring to obtain them, which one of its witnesses testified were worth $4,275. On January 23, 1900, the city notified the company to take no further steps to secure bonds in addition to those aggregating $20,000, which had been called, and on February 15, 1900, the parties agreed that the contract between them should cease and terminate upon the delivery to the brokerage company of warrants of the city to the amount of $4,275. No warrants were ever delivered, and the company brought this action to recover the $4,275 on the ground that by the contract of February 15, 1900, its claim against the city had been compromised, and the city had agreed to pay this amount to settle it, and on the further ground that its services in procuring the surrender of the bonds for $20,000 and its endeavors to obtain other bonds were reasonably worth $4,275. The court below sustained its claims, and directed a verdict and judgment for the amount it demanded.

B. Hudson and W. R. Biddle, for plaintiff in error.

T. F. Garver (J. B. Larimer, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The foundation of the judgment in question in this case is an alleged agreement of compromise and settlement of a claim against the city of Ft. Scott for compensation for services rendered about the investment of the sinking fund of the city under a contract between the brokerage company and the municipality. This judgment is challenged on the ground that the original contract was beyond the powers of the city. If the city was without power to make any contract to employ or pay any one for purchasing or procuring bonds for

the investment of its sinking fund, it was equally without power to make a valid agreement to compromise or to settle a claim founded on such an agreement. It could not, by an agreement to compromise a baseless claim, subject itself to liability that it could not create by contract. Hence the charge that the agreement to pay for services rendered to assist the city in procuring bonds in which its sinking fund might be invested was void lies at the root of the whole matter. When the original contract between the city and the brokerage company was made to pay to the latter one-half of the difference between the premiums it should expend for the purchase of the bonds of the city and the amount of interest thereon for 9¾ years, the city had a sinking fund of about $45,000, and this contract was made for the sole purpose of purchasing bonds in which this fund might be invested. The city then had bonds outstanding to the amount of $20,000 which were redeemable at its pleasure. The statutes of the state of Kansas expressly provided that, when there were sufficient funds in the hands of the city treasurer of this city belonging to the sinking fund, he should call in and pay as many redeemable bonds as that fund would liquidate, and that at the expiration of 30 days from the date of the last publication of his call the bonds called should cease to bear interest. Gen. St. Kan. 1899, § 5722. Both of the parties to the original contract supposed, when it was made, that none of the bonds were redeemable in less than 9¾ years, so that, as far as this agreement related in any way to the bonds that were then redeemable upon call, it was made under a mutual mistake of fact, and was voidable. They made their agreement under the mutual understanding that bonds must be and were to be purchased for the investment of the sinking fund. Upon this subject the statutes of Kansas provided:

"Each city governed by the provisions of this act shall be a body corporate and politic and shall have power: * * * 4th. To make all contracts and do all other acts in relation to the property and concerns of the city necessary to the exercise of its corporate or administrative powers." Gen. St. Kan. 1899, § 702.

"The mayor and council shall have the care, management and control of the city and its property and finances and shall have power to enact ordinances for the purposes hereinafter named not repugnant to the constitution and laws of this state. * * * 40th. To appropriate money and provide for the current expenses of the city: provided, that no indebtedness shall be incurred, or order or warrant or evidence of indebtedness of the city shall be drawn or issued on the treasurer in payment of any indebtedness to exceed the amount of funds on hand in the treasury at the time." Section 710.

"It shall be the duty of county, township and city treasurers in this state to invest all moneys in their hands belonging to any sinking fund in the manner provided for in this act." Act April 25, 1874, § 1 (Gen. St. Kan. 1899, § 6284).

"The county treasurer of any county shall, by and with the consent of the board of county commissioners, invest all moneys in his hands which have been levied and collected as a sinking fund to redeem the outstanding bonds of the county as follows: First, in the bonds of the county for which such sinking fund has been levied: provided the same can be purchased at a price not exceeding their market or par value." Act April 25, 1874, § 2 (Gen. St. Kan. 1899, § 6285).

"The treasurer of any city in the state shall, by and with the consent of the mayor and common council of such city, invest all moneys which shall be paid into his hands belonging to the sinking fund of such city in the same manner as that prescribed for investment made by county treasurers,

except that bonds of the city shall be first purchased, if they can be obtained at a price not exceeding their market or par value." Act April 25, 1874, § 4 (Gen. St. Kan. 1899, § 6287).

"Whenever the amount of the sinking fund for investment belonging to any county, city, township or school district shall exceed the sum of two thousand dollars there shall first be an advertisement inviting sealed bids for such sinking fund or any part thereof, said advertisement to be signed by the clerk of the county, township, city or school district, as the case may be, and published three times successively thirty days previous to the award of such funds in the official paper of the county; and such sinking fund shall be awarded to the party or parties offering bonds at the lowest price." Act April 25, 1874, § 12 (Gen. St. Kan. 1899, § 6294).

Conceding, now, without deciding, that the mutual mistake of the fact that bonds of the city to the amount of $20,000 were redeemable when the original agreement was signed did not avoid that contract, and treating the case as though these bonds had not been redeemable until 9¾ years after the agreement was made, let us consider whether or not, under these statutes, this city had the lawful authority to make the agreement in question. Municipal corporations are the creatures of the statutes under which they are organized and operated. By those statutes their powers are granted, measured, and limited. Beyond the limits of the powers there expressly granted and those fairly implied therefrom or incident thereto they cannot lawfully act or agree to act, and a fair and reasonable doubt of the existence of a corporate power is fatal to its being. Contracts for the lawful exercise of the powers of a corporation are binding and enforceable. But agreements of municipalities beyond the scope of their granted powers are null, and as though they had not been. They are void against the state, because they are unlawful usurpations of powers which it has reserved. They are void between the parties to them, because those parties are charged with knowledge of the statutes, and of the limits of corporate powers there fixed; and no formal assent of corporations or officers, no alleged estoppel, can give validity to such agreements, or induce the courts to enforce them. Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 51 Fed. 309, 316, 2 C. C. A. 174, 230; 1 Dill. Mun. Corp. (3d Ed.) § 89; Central Transp. Co. v. Pullman's Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; McCormick v. Bank, 165 U. S. 538, 549, 17 Sup. Ct. 433, 41 L. Ed. 817; Bank v. Kennedy, 167 U. S. 362, 367, 17 Sup. Ct. 831, 42 L. Ed. 198; Bank v. Hawkins, 174 U. S. 364, 370, 19 Sup. Ct. 739, 43 L. Ed. 1007; Putney Bros. Co. v. Milwaukee Co. (Wis.) 84 N. W. 822, 823; Trester v. City of Sheboygan (Wis.) 58 N. W. 747; Mousseau v. Sioux City (Iowa) 84 N. W. 1027; Von Schmidt v. Widbur (Cal.) 38 Pac. 682; Dube v. Peck (R. I.) 48 Atl. 477, 479; Gaslight & Coke Co. v. City of New Albany (Ind. Sup.) 59 N. E. 176, 178; James v. City of Seattle (Wash.) 62 Pac. 84, 79 Am. St. Rep. 957.

Again, the designation by the statutes which grant a corporate power of the way in which it shall be exercised limits the right to exercise it to the manner thus prescribed, and renders its use in any other way ultra vires of the corporation and void. In Putney Bros. Co. v. Milwaukee Co. (Wis.) 84 N. W. 822, 823, the statutes empowered the county to support and care for inebriates in county asylums and county poorhouses, and the supreme court of Wisconsin

held that a contract by a county to pay for the care and cure of an inebriate in a Keeley institute was beyond the powers of the county, and subjected it to no liability for the board which had been furnished or for the medical services that had been rendered under the agreement. That court said:

"Thus it appears that the legislature has provided certain methods by which inebriety or habitual drunkenness may be dealt with, and we think it plain that by prescribing certain methods it has excluded other methods, and that the general provisions requiring the county or town to care for and relieve paupers refer to necessary food, clothing, ordinary medical treatment, and the like, and not to medical treatment looking towards the cure of inebriety as a disease. There was, therefore, no authority resting in any officer or public body to incur the liability here claimed in the first instance. Such being the case, there can be no ratification by the county. A county cannot ratify the unauthorized acts of its agents which are beyond the scope of its corporate powers. Frederick v. Douglas Co., 96 Wis. 411, 71 N. W. 798."

On the same principle the supreme court of Wisconsin also held in Trester v. City of Sheboygan, 58 N. W. 747, where the statutes authorized the city to procure an easement for a street by condemnation, that the municipality had no power to buy such an easement, and that an agreement to pay the purchase price thereof was void. And in Gaslight & Coke Co. v. City of New Albany, 59 N. E. 176, 178, the supreme court of Indiana decided that a contract for lighting a city for a term of 23 years was ultra vires of the municipality, and void under statutes which authorized the city to make agreements for lighting it for terms not exceeding 10 years.

The application of these established principles of the law of corporations to the facts of this case leaves no doubt of the conclusion which they compel. The statutes of the state of Kansas from which this city derives its powers will be searched in vain for any provision which grants it any authority to contract with any party to purchase or to procure its bonds for the investment of its sinking fund. On the other hand, the act of 1874 expressly forbids the making of any such contract. It declares in its first section that it shall be the duty of the city treasurer to invest all moneys of the city in his hands in the manner provided in that act (section 6284), and it provides in its twelfth section that whenever the amount of the sinking fund belonging to any city exceeds $2,000, that fund shall be invested in the bonds of those parties who, after the publication of a prescribed advertisement for sealed bids, offer their bonds at the lowest price (section 6294). When this contract was made, the amount of the sinking fund of the city of Ft. Scott, ready for investment, exceeded $2,000, and that city fell within the express provisions of these sections. It was authorized by section 6294 to invest its sinking fund in bonds of parties who, after the publication of the prescribed advertisement, offered them at the lowest price; and it was prohibited by section 6284 from investing its sinking fund by the purchase of bonds in any other way. In the face of these statutes it made an agreement with the brokerage company, without any advertisement inviting bids, to invest its sinking fund in its bonds at any price not exceeding 10 per cent. premium that the company might pay for them, and to pay that corporation for its services in buying them one-half of the difference between the amount

of the premium it paid and the interest on the bonds for 9¾ years. The maintenance and enforcement of such a contract would be a disregard of established principles of the law of corporations and a practical repeal of the sections of the statutes to which we have just adverted. The very evil at which these sections were leveled was the foolish and reckless expenditure of the sinking funds of municipalities by such thriftless contracts as that before us. The plain purpose and manifest intention of the legislature in enacting the provisions of these sections were to prevent cities from making private purchases or private contracts about the purchase of their bonds for the investment of their sinking funds, and to limit them to the purchase of the bonds at the lowest price offered after a public advertisement inviting bids. The case at bar is a striking illustration of the wisdom of this legislation. Here is a contract between this city and the brokerage company, under which, if it were valid, the defendant in error might have bought bonds of the city for investment in its sinking fund of the par value of $40,000 at 10 per cent. premium, and then have compelled the municipality to purchase them at that price, and to pay it for its services more than 16 per cent. of their par value in addition, when the city had the right, and it was its duty, under the statutes of the state of Kansas, to call and cancel one-half of this amount of bonds without the payment of any premium whatever. To enforce such a contract would be to strike down the wise and salutary provisions of the statutes of Kansas relative to the investment of sinking funds of cities, and to fly in the teeth of the settled rules which measure the powers of corporations. The authority to make this agreement was not granted to, but was expressly withheld from, this city by the plain provisions of sections 6284 and 6294, and the validity of the agreement cannot be sustained.

Counsel for the defendant in error contend, however, that, although the contract was invalid, the city is estopped from defeating this action upon that ground because it has received and retained the benefits of the agreement. They concede that, if the agreement had been without the scope of the powers of the corporation, an estoppel from denying its validity could not have arisen. But they invoke the conceded rule that, where a corporation has received and retained the benefits of a contract, which was invalid not because it was beyond the scope of its power, but because in the creation or the performance of the contract its power was not exercised in the manner prescribed by the law, it is estopped from denying its validity for the purpose of defeating the action of an innocent party for a breach of it. There are, however, many reasons why this principle is inapplicable to the case in hand. One reason—and an all-sufficient one—is that the brokerage company was not permissively ignorant of the fact that the city was without power to make the agreement, and the city never made any false representation or concealment of that fact. A misrepresentation by one party of a fact of which the other party is actually and permissively ignorant is a sine qua non of an equitable estoppel. Bigelow, Estop. § 552. The city did not solicit, persuade, or induce the brokerage company to enter into this agreement, or to expend its money, or to render its services by any misrepresentation

of its authority. The brokerage company solicited this contract from the city. It was the actor, and it was its duty to ascertain at its peril and to know whether or not the agreement which it requested and induced the city to make was within the statutory powers of the municipality. The laws to which reference has been made in this opinion, and which made that agreement void, were spread upon the records of the legislation of Kansas, and were printed in its statute books. They disclosed the fact that the city was without authority to make this contract, and in the eyes of the law the brokerage company knew that fact when it entered into the agreement, because it was legally charged with a knowledge of the law.

Again, while a corporation is sometimes estopped as against an innocent party from denying the validity of a contract which has resulted from the irregular or illegal exercise of some of its powers, it is never estopped as against one who knowingly assists in the illegal exercise of the power from denying the validity of an agreement whereby such a party agrees to aid the corporation in the unlawful use of its authority. The city had the general power to purchase its bonds for the investment of its sinking fund. But it was prohibited from buying them in any other way than from the lowest bidder after public advertisement. If any innocent bondholder had sold and delivered his bonds to the city through the brokerage company, the city might well have been estopped by its retention of the bonds from defeating an action by the vendor for the purchase price of the property he had delivered to it. But the brokerage company is in no such position. It solicited and procured a contract with the city whereby it undertook to assist that municipality in the exercise of its power to purchase its bonds in an illegal—in a prohibited—manner. No estoppel from denying the validity of such an agreement can arise in favor of the brokerage company, because the law charges it with knowledge that the agreement and its execution were mala prohibita, and because it actively and knowingly participated in the attempted violation of the statute. The contract of these parties cannot be sustained on the ground of estoppel, because there was no ignorance of any material fact by the brokerage company, and because there was no misrepresentation of any such fact by the city.

As the agreement was void, and the brokerage company was charged with knowledge of that fact when it entered into it, the subsequent agreement to compromise and settle the claim founded upon this invalid contract was equally void, and for the same reason, and no judgment for a breach of either of these agreements can be supported.

Nor can this judgment stand upon a quantum meruit, upon the ground that the services rendered by the company in endeavoring to secure the purchase or the surrender of the city's bonds were worth the amount of the judgment, because the city had no more power to employ and pay the company the reasonable value of its services to aid it in violating the law and in investing its sinking fund in an illegal manner than it had to make the original written agreement for that purpose. The truth is that there is no tenable ground upon which this judgment can be supported, and this fact appears as clearly from the pleadings as it does from the evidence. In such a case the

defendant in the trial court is entitled to a judgment under the statutes of Kansas notwithstanding an adverse verdict. Gen. St. Kan. 1899, § 4675.

Many other questions have been discussed in the arguments and briefs of counsel, but none which tend in any way to modify the inevitable conclusion which results from the statutory limitation of the powers of the city. No good purpose would be served by prolonging this opinion to discuss these questions. If, however, the equities of this case were to be considered, they would be found not irreconcilable with the conclusion that the law compels. The original agreement was unilateral, and void in its inception. The brokerage company was not bound by it to purchase or secure any bonds, and consequently the city was not bound to take or pay for any bonds or any services. A contract for the future delivery of personal property is void for want of consideration and mutuality if the quantity to be delivered is conditioned by the will, wish, or want of one of the parties. Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co. (C. C. A.) 114 Fed. 77, 81. The purchase and delivery of the bonds for the sinking fund were conditioned by the will or wish of the brokerage company. Its agreement went no farther than this sentence: "We think it is possible we may be able to buy enough bonds from the holders to at once apply the sinking funds, and stop the entire interest by the cancellation of the bonds." It contained no obligation to purchase or secure a single bond. Again, the contract was an agreement that the brokerage company should buy bonds, deliver them to the city, and the city should pay for bonds which the brokerage company bought. But the company never bought a single bond. Hence the city never became liable to purchase or pay for a bond, or for the services of the company in purchasing them. The company did induce the city to call in the bonds to the amount of $20,000 which it had the right to call, and did doubtless render services in endeavoring to secure other bonds. But it never complied with the terms of its original agreement, and, if it rendered any services, they were not of the character which it there proposed to render, and its action did not fulfill any of the terms of its original contract. These considerations are not determinative of the case, but they tend to show that the result is not altogether unjust or inequitable. The city derived no benefit from the services of the company which it would not have derived from an examination of the statutes and a compliance with the law. The company purchased no bonds and rendered none of the services which, under its original proposition, conditioned its right to compensation. The judgment below must, however, be reversed on the ground that the original contract, the agreement of compromise, and the implied agreement to pay the reasonable value of the services of the company in procuring the bonds of the city for the investment of its sinking fund were all alike beyond the powers of the corporation, and void.

The judgment below is accordingly reversed, and the case is remanded to the circuit court, with instructions to render a judgment in favor of the defendant notwithstanding the adverse verdict.