## FELLOWS v. NATIONAL CAN CO.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1919.)

### No. 3207.

1. DAMAGES ☞82—LIQUIDATED DAMAGES OR PENALTY—BREACH OF CONTRACT.
    In a contract for lease of machines, a provision that on failure to pay rent by the 10th of each month for the preceding month it should be increased 10 per cent, *held* void, as for a penalty.

2. PATENTS ☞216—LEASE OF MACHINES—ROYALTY—PROVISION FOR MINIMUM.
    In a contract for leasing solder-saving machines, providing for the payment as rental of one-third the saving of the machines each month, a provision immediately following, "But the minimum amount of rent or royalty paid in any calendar year, after the year in which the machines are installed, shall be $300 for each machine," *held* not ambiguous, and reasonable and valid; it being shown that, if a machine was continuously used, the royalty would much exceed such sum.

3. ESTOPPEL ☞70(2)—EQUITABLE ESTOPPEL—DELAY IN ASSERTING RIGHTS.
    Where a lease of machines for a term of years, subject to their return at any time by lessee, provided for payment of rental monthly on a royalty basis, but contained a plain and unambiguous provision fixing a minimum annual rental for each machine, and each party had a copy of the contract, neither the failure to demand the annual minimum at the end of each year, nor the acceptance of monthly rentals thereafter, estopped lessor to demand the deficiency on termination of the contract by lessee.

4. ESTOPPEL ☞54—EQUITABLE ESTOPPEL—EQUAL KNOWLEDGE OF FACTS.
    Where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.

5. LIMITATION OF ACTIONS ☞46(6)—ACCRUAL OF RIGHT OF ACTION—CONTINUING CONTRACT.
    Where a lease of machines for a term of years provided for monthly rental on a royalty basis, but fixed a minimum annual rental for each machine, without stating when any deficiency should be payable, a cause of action for such a deficiency arose on the lapse of a reasonable time after expiration of the year, and from that time limitation ran against an action therefor.

6. PATENTS ☞216—LEASE OF MACHINES—CONSTRUCTION—RENTAL.
    Contract for leasing of machines on royalty, with a fixed minimum annual rental for each machine, construed with respect to rental due on machines for the year in which they were returned under the contract.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action at law by Olin S. Fellows against the National Can Company. Judgment for defendant, and plaintiff brings error. Reversed.

W. H. Foucar, of Chicago, Ill., for plaintiff in error.
N. Calvin Bigelow, of Detroit, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. On July 6, 1905, plaintiff in error (plaintiff below) leased to defendant, in writing, eight of plaintiff's patented solder-saving machines and their respective accessories and supplies, at a rental (subject to a minimum hereinafter stated) of one-third of the value of the solder saved by the machines (100 pounds of "solder savings" being taken as equal in value to 95 pounds of original solder), during the life of either of the patents thereon (the last of which would expire in 1920); the lessee having, however, the absolute right to cancel the lease at any time by returning to plaintiff the machines and their supplies. Payment of rental for each month, accompanied by written returns of the number of cans treated and the solder saved, were to be made to plaintiff within the first 10 days of the following month, with express provision that the minimum amount of rent in any one calendar year (after the year in which the machines should be installed) should be $300 for each machine. There was further provision for an increase of 10 per cent. each month upon the amount of rentals due in case of failure to make payment within the required time. Four machines had been installed under a former contract, which was superseded by the one in suit. These were retained under the new contract, and two more were received by defendant by or about January 1, 1906. The remaining two machines called for by the contract were never installed or asked for, and they are not involved in the claims of either party. Four of the machines were surrendered by defendant during 1909, and the remaining two in 1913. Monthly payments (without reference to the annual minimum) were made by defendant during the time the respective machines were in its possession, aggregating for 1906 $580.56, for 1907 $511.53, for 1908 $1,117.41, for 1909 $412.03, for 1910 $61.25, for 1911 $130 and for 1913 $116.17—a total of $2,929.05. In July, 1908, on defendant's representation that the 5 per cent. shrinkage in solder savings was less than actual experience, it was agreed (and carried out) that settlements thereafter should be upon a 90 per cent. basis, instead of 95 per cent.

In 1914, after the last machine was returned, plaintiff for the first time called on defendant for payment of the annual minimum rental of $300 per machine, less the $2,929.05 actually paid on monthly statements of savings; the claimed deficiency being $6,670.95, exclusive of interest. This suit, brought June 14, 1915, is to recover the amount of that deficiency, together with the 10 per cent. increase for failure to make payments when due, amounting to the further sum of $14,482.41, exclusive of interest thereon.

Defendant pleaded that the 10 per cent. clause was void and unenforceable, that the suit was entirely barred by limitation, that the 1908

savings percentage arrangement amounted to a novation, that the rental payments were made and received in full settlement and satisfaction of defendant's now asserted liability, and that by such acceptance of such payments plaintiff waived the claims now made and is estopped to assert them. On the trial, the petition was amended to allege fraud in procuring the contract.

The trial judge held that the statute of limitations did not apply, that the 10 per cent. provision was void as a penalty, and (a jury having been waived), while declining to hold that the contract was obtained by plaintiff's fraud, held that the minimum provision was ambiguous, concluding from its language, the statements of the parties prior to and at the time of its making, and by their dealings thereafter, that it should be construed as merely giving plaintiff the right to cancel the contract for failure to make the one-third net savings equal $300 per year. In that connection the court found as facts that while (a) the plaintiff himself always believed that he was entitled by the strict terms of the contract to the minimum annual rental, yet (b) that defendant supposed it was required to make only the monthly payments of one-third of the solder savings, and that, had it thought itself liable for the annual minimum rental, it would not have signed the contract in the first instance, or, having signed it, would have returned the machines and canceled the contract; (c) that plaintiff represented to defendant, at the time the lease was signed, that under the contract "there were savings certain to result to defendant, and that the terms of the contract were such that it could not result in any loss to defendant, because it provided only for a rental to be measured by a portion of the savings of solder"; (d) that plaintiff knew that defendant would cancel the contract if he asserted the minimum provision, knew that defendant believed all rentals claimed were being settled in full each month, knew that defendant was retaining the machines under such belief, and intended that defendant should so believe. The judge concluded, as matter of law, that plaintiff was thereby estopped from recovering.

[1] 1. The District Judge was clearly right in denying relief under the clause for an increase of 10 per cent. per month. If regarded as interest, the provision was usurious and void under the applicable Michigan law. If intended as stipulated damages, it was under the present case equally void. In the normal case, damages for delay in payment of money are measured by interest. Assuming, however, that it was competent for the parties to agree upon a higher measure, it is clear that the provision in question bears no relation whatever to actual compensation or, actual damages, and was thus a mere penalty and void. Manhattan Life Ins. Co. v. Wright (C. C. A. 8) 126 Fed. 82, 85, 61 C. C. A. 138; McCall v. Deuchler (C. C. A. 8) 174 Fed. 133, 98 C. C. A. 169.

2. The District Judge was right in not holding that the contract was obtained by fraud; actual fraud would not be the natural inference from the record. There was no dispute in the testimony as to what was actually said and done by the parties throughout their relations, both before and after the contract was made. The trial judge thought

the witnesses on both sides testified truthfully. Plaintiff was the only witness on his side; defendant had but two witnesses.

The contract which the one in suit superseded contained the same annual minimum provision; there is no testimony that this previous contract was not read over by defendant; on the contrary, its sales manager who signed it (at the manager's direction), while not remembering reading it over, or that anything was said about the annual minimum when the contract was signed, "infers" that he read it over. It was on a printed form; the minimum provision immediately followed the solder-savings provision and in the same type; it was signed for plaintiff by his agent, who procured it; a copy was retained by defendant, which attached thereto plaintiff's letter, stating his agent's report that the contract was closed, and advising defendant of the ordering of four machines and their equipment. Defendant's manager says he signed the new contract without reading it, and did not recall the signing of the earlier contract. The only reason assigned for making the new contract is that the former one called for but four machines, while the new one contemplated eight.

The only differences between the two contracts relate to the number of machines and the ratio of original solder to solder savings, which was 97 to 100 in the former, as compared to 95 to 100 in the later contract. Plaintiff did not remember calling defendant's attention to the minimum clause, and admits that, when the later contract was signed, he told defendant's manager "the saving capacity of the machines, and that he would be expected to pay him one-third of the value of the savings." Plaintiff testified, however, that he "certainly supposed they (defendant's representatives) had read the contract and knew" its conditions. We find nothing in the record discrediting this statement of plaintiff's belief. The testimony which comes nearest to sustaining the charge of fraud is that of defendant's manager, who says that when the later contract was signed "there was no further talk than the percentage basis. My recollection is that it was one-third and two-thirds. He did not state anything at any time about any compensation to be paid to him for the use of these machines other than the percentage basis," and, in another connection, that at one time (possibly before the earlier contract was signed) plaintiff told him with reference to the saving of solder by the use of his machines that "he got a certain percentage, and we would get a certain percentage, and there was no chance of losing. He never said anything to me in these conversations with reference to a contract in which there was a minimum clause of $300 per year minimum per machine."

There is no room for more than mere suspicion of fraud in the fact that in September, 1905, two months after the contract was made (but to which year the annual minimum did not apply), plaintiff in a letter offering to help in getting the machinery to work properly said, "I am interested in your making cans, as otherwise I get no returns, and possibly my experience might be of use to you;" nor by the fact that in July, 1906, a year after the contract in question was made, but about six months before an annual minimum would be payable (if ever) he wrote, "I trust that you will soon install this machine for I think it

would mean considerable saving to you, and your returns to me are so small that I would very much appreciate this increase." If defendant could not make the machines already installed work, or did not use them, it would naturally return them, and the more machines defendant installed the more returns plaintiff would get; he was, moreover, interested in getting more than the minimum annual rental. The testimony, taken together, falls short of proving fraud in the making of the contract. On the trial, plaintiff's counsel stated that "the kind of fraud we complain of is more of a fraud which has taken place after the entering into the contract."

3. We see no merit in the contention (not passed upon below) that the 1908 solder ratio change amounted to a novation. It had no relation to the wholly separable annual minimum feature, and concerned solely the monthly solder-saving provision, which has been fully carried out. Nor do we see any merit in the claim that the statute of limitations has barred recovery under the minimum provision as to all the years in question.

[2] 4. That the annual minimum provision was originally valid, in the absence of fraud in its procurement, is not open to question. It was a reasonable provision. There was undisputed testimony that during the year 1905 and the two following years plaintiff had about 15 to 20 contracts in force, all on practically the same form of blanks and covering about 50 or 60 machines, and that his share of the earnings of these machines, on the same one-third basis, averaged very much in excess of the $300 annual minimum (in one case a machine saved $1,800 in one month); and defendant's manager testified that, had its factory been run to full capacity, it could have turned out 20 times as many cans as it did, that there was demand for cans of that kind, and that defendant's failure to get more orders was due to its inability to meet competition, and that for this reason the machines in question were operated but a small part of the time. The machines were sent back because defendant discontinued the lines they were used on. The annual minimum provision was thus but a reasonable means of assuring the largest available use of the machines.

We cannot agree with the learned district judge that it is ambiguous. It immediately follows the provision for a solder-saving rental, and is in this language, "but the minimum amount of rent or royalty paid in any calendar year, after the year in which the machines are installed, shall be $300 for each machine." Taken in connection with what precedes, it unmistakably requires defendant to pay ultimately at least $300 per year for each machine. The earlier requirement of monthly payment on the basis of solder saving creates no ambiguity respecting defendant's obligation under the minimum provision, because until the calendar year was closed, and the last monthly report was in, it could not be known that the minimum for the year had not been reached, and therefore it could in no case be called for as such until after the close of the calendar year. Nor does the question whether the penalty of 10 per cent. monthly increase for nonpayment of rent when due was meant to apply to the annual minimum payment create any ambiguity respecting defendant's obligation to pay that

minimum. It results that it was error to admit parol testimony in aid of the construction of the minimum provision, and that the interpretation placed by the District Court upon that provision is not maintainable.

Whether the judgment below shall stand depends upon the effect of plaintiff's acceptance of the monthly solder-savings payments and his nonclaim of the annual minimum when due, as either amounting to payment or working an estoppel.

That the acceptance of the monthly payments did not amount to present payment and satisfaction of the annual minimum is plain. All payments seem to have been made by check, each of which was accompanied by a statement on a printed blank (presumably furnished by plaintiff) of "solder saved" during the month or months covered, with total pounds saved (gross and net), its cost, amount of the two-thirds retained, followed by the words "check inclosed for one-third," and stating amount of check. None of the checks sent up here purport to have been delivered or accepted in full settlement of defendant's liability under the contract, for the stated period or otherwise; all are, on their face, in ordinary form. Six of them contain no indorsement by plaintiff, except his signature. Nine of them contain this indorsement (signed by plaintiff): "Indorsement on this check is a receipt in full for *following invoices*" (italics ours), followed (in the case of seven checks) by memorandum of amounts (covered by check) of "solder saved" (or "solder savings," or "solder savings adjustment") for the given month or months separately. In the case of the remaining two the descriptive words "solder," etc., are omitted; the indorsement reading (for example), "March account, amount 73.08, freight 14.28, check 58.80." Such receipt of monthly savings checks throughout a given year would not amount to a payment or waiver of payment of the annual minimum thereafter payable for that year; nor would such result follow from the fact that each of two of the checks covered payments for defendant's belated reports for a series of months both before and after the close of the calendar year. The checks would naturally have read the same, had the annual minimum provision been recognized as in force, and intended to be met.

[3] In determining whether the facts support the trial judge's conclusion of estoppel, we must start with the propositions that the contract clearly and unambiguously required defendant to pay after the end of each calendar year (and not until then) an amount which added to the monthly solder-savings payments, would aggregate $300 for each machine, and that the contract was not induced by fraud. Beyond this we must accept as final the facts found by the trial judge, so far as supported by testimony or reasonable inference therefrom. We must also accept such further facts as appear without dispute in the record.

The conclusions of fact made by the learned trial judge we accept with some modifications. In especial, we think the finding whose substance we have included in clause (c) above goes farther than warranted, in view of what we have said in discussing the question of fraud.

We think the finding supported to this extent: Plaintiff always believed himself entitled to the minimum annual rental; the minimum provision, however, was not called to defendant's attention when the second contract (the one in suit) was signed, and the talk at that time regarding rentals related only to the percentage basis; defendant had overlooked or forgotten the minimum provision, if it had ever been impressed upon its mind, and made the monthly solder-savings payments under the supposition that its rental liability was thereby satisfied, and if it had had in mind that it was liable for an annual minimum it would either not have executed the contract in suit (as distinguished from its predecessor contract) or at least would have canceled it and returned the machines as soon as it appeared (as it later did) that the value of one-third of the solder saved was so greatly below the stipulated minimum; that at some time after plaintiff's failure to call for the minimum for 1906 he believed, without being so told, that defendant was making its monthly solder-savings payments and retaining the machines in the belief that its rental liability was being satisfied by. such payments, and that plaintiff believing (certainly after the first three years' operation) that defendant would cancel the contract, at least long before it did, if the minimum provision were asserted, purposely refrained from such assertion, although probably intending to make such claim after the machines were all returned, especially if the aggregate monthly solder-savings payments for the entire period of years should be less than the aggregate annual minimum. Whether such cancellation would have been made in either of the first three years, which were perhaps more or less experimental, as depending upon the orders obtainable, and for the aggregate of which three years the total solder saved (not the one-third thereof) was $1,200 above the $300 minimum per machine, perhaps rests more or less on conjecture.

But giving defendant the benefit of the doubt respecting all conclusions of fact which we have treated as merely doubtful, and taking into account the acceptance of the monthly checks and the nonassertion of claim for annual minimum when due, the question is: Do these facts effect an estoppel against plaintiff? The question of waiver in this respect is so closely allied to estoppel as not to require separate treatment.

It may be conceded that, had the minimum provision been ambiguous, or had plaintiff known when the contract was made that defendant did not understand that the minimum provision existed, or had defendant offered to return the machines and been induced not to do so by distinct representation that defendant was liable only for one-third of the monthly savings, or had plaintiff, in connection with the payment of monthly savings, distinctly declared that defendant was liable to no further rental, thereby relieving defendant from attention on its part to the terms of its contract (Graham v. Thompson, 55 Ark. 296, 18 S. W. 58, 29 Am. St. Rep. 40; Westermann v. Corder, 86 Kan. 239, 119 Pac. 868, 39 L. R. A. [N. S.] 500, Ann. Cas. 1913C, 60), plaintiff's conduct in accepting the monthly payments would operate as

an estoppel to claim the annual minimum. But no one of these conditions is present. If the acceptance of the monthly savings checks did not effect satisfaction and payment of the annual minimum, it is difficult to find in such acceptance any substantial effect by way of estoppel. The minimum liability was not merely contingent; it was fixed and inevitable. The form complete payment should take, whether through monthly payments alone, or following such payments through the addition thereto of a deficiency in such monthly payments, was the only contingent feature. What we have said respecting the relation of the letters of September, 1905, and July, 1906, to the subject of fraud in procuring the contract, applies also to the subject of estoppel.

Upon this record, the question comes down to this: Did plaintiff's receipt from month to month, over a series of years, of preliminary payments expressly provided for by his contract, without calling for the additional payments equally expressly, and clearly and unambiguously, called for by the same contract, which had been obtained in good faith and in the belief that defendant had read it and knew its conditions, estop him from claiming such annual payments before the statute of limitations has run against them, merely because he discovered that defendant (who retained one of the duplicate copies of the contract) supposed, through carelessness ·or forgetfulness, that it was paying all it was obligated to pay, and knew or believed that defendant would cancel the contract if demand for the annual minimum were made? Silence alone could not estop plaintiff, unless he was legally or in good conscience bound to speak.

[4] Granting that the Golden Rule would require that plaintiff save defendant from the consequences of its own carelessness or forgetfulness, by advising it of its liability under the contract (which defendant was legally bound to know), although such advice would have subjected plaintiff to a loss possibly as great as that from·which defendant would thereby be saved, we are cited to no authority, nor have we found any, imposing a legal obligation to do so in a case such as here presented, especially when there is taken into account the possibility always existing from year to year that defendant might obtain orders enough to make its proportion of the savings equal or exceed the annual minimum. In our opinion plaintiff's mere silence, under the circumstances stated, did not create an estoppel. Slaughter's Adm'r v. Gerson, 13 Wall. 379, 20 L. Ed. 627; Brant v. Virginia Coal & Iron Co., 93 U. S. 326, 337, 23 L. Ed. 927; Sheffield Car Co. v. Hydraulic Co., 171 Mich. 423, 137 N. W. 305, Ann. Cas. 1914B, 984; Bright v. Allan, 203 Pa. 386, 394, 53 Atl. 248; Ft. Scott v. ·Eads Brokerage Co. (C. C. A. 8) 117 Fed. 51, 54 C. C. A. 437.[1]

---

[1] In the Slaughter Case, 13 Wall. 385, 20 L. Ed. 627. Justice Field said: "The neglect of the purchaser to avail himself, in all such cases, of the means of information, whether attributable to his indolence or credulity, takes from him all just claim for relief."

In the Brant Case, 93 U. S. 337, 23 L. Ed. 927, the same Justice said: "Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

In Bright v. Allan, 203 Pa. 399, 53 Atl. 252, the court said, quoting from a

[5] 5. As the case must be tried again, more must be said on the subject of limitation. The time when the balance required to make up the annual minimum is payable not being expressly stated in the contract, the law implies an obligation to pay within a reasonable time after it is earned (Palmer v. Palmer, 36 Mich. 487, 24 Am. Rep. 605), or, as applied to this specific case, within a reasonable time after defendant's monthly reports showed that the aggregate of solder-savings payments were less than the annual minimum. The question of reasonable time would be one of fact or of law, according as upon the record reasonable minds could or could not reach differing conclusions. International Co. v. Stadler (C. C. A. 6) 212 Fed. 378, 382, 129 C. C. A. 54; Marmet Co. v. Peoples Co. (C. C. A. 6) 226 Fed. 646, 141 C. C. A. 402. The limitation laws of Michigan control. Under the fourth subdivision of section 14135 of Howell's Mich. Statutes (2d Ed.), actions of assumpsit founded on contract, express or implied, must be commenced within six years after the cause of action accrues; and this without regard to the time when actual damage accrues. Aachen & Munich Fire Ins. Co. v. Morton (C. C. A. 6) 156 Fed. 654, 657, 84 C. C. A. 366, 15 L. R. A. (N. S.) 156, 13 Ann. Cas. 692. The case is not within section 14139 of the Michigan Statutes, which makes the balance due upon a mutual and open account current accrue at the time of the last item of the account. There was here no mutual and open account current. Kimball v. Kimball, 16 Mich. 211; White v. Campbell, 25 Mich. 463; Mandigo v. Mandigo, 26 Mich. 349. Defendant supposed the account closed monthly, plaintiff permitted it to be so treated. Payments were not made upon an open account as such, so as thereby to prevent the running of the statute. Each unpaid remnant of annual minimum was thus practically a separate installment under the contract, and could be sued for separately as soon as payable and without waiting for complete termination of the contract relations by the return of the last machine. From the time that each such remnant was subject to suit the statute began to run. Had the rental been for use of real estate, the action would

prior decision of the same court: "'If, therefore, the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel." The preceding cases involved questions of title or boundary of real estate. The principle, however, seems equally applicable to the instant case.

In the Eads Case, 117 Fed. 56, 54 C. C. A. 442, Judge Sanborn said: "A misrepresentation by one party of a fact of which the other is actually and *permissively* ignorant is a sine qua non of an equitable estoppel." (Italics ours.) Petition for certiorari denied by Supreme Court, 187 U. S. 647, 23 Sup. Ct. 846, 47 L. Ed. 348.

In Sheffield Co. v. Hydraulic Co., 171 Mich. 450, 137 N. W. 315, Ann. Cas. 1914B, 984, the court quoted with approval the rule as stated in 11 Am. & Eng. Enc. of Law (2d Ed.) at page 434: "It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another, to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge, and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

have been barred after six years under subdivision 3 of section 14135. Stewart v. Sprague, 71 Mich. 50, 60, 38 N. W. 673, 676. Whether or not that subdivision applies to rentals of the class here in suit (its language is "all actions for arrears of rent"), the principle of the decision is applicable, having in mind the language of subdivision 4 of the section "all actions of assumpsit * * * founded upon any contract * * * express or implied." If preliminary demand were necessary to the right to sue, the demand would be barred by the failure to make it within six years, and the right of action would be extinguished by the delay. Palmer v. Palmer, supra, 36 Mich. at pages 493, 494, 24 Am. Rep. 605; Sullivan v. Ellis (C. C. A. 8) 219 Fed. 694, 697, 135 C. C. A. 366. In this view, limitation could, at the most run only as against the years 1906, 1907, and 1908.

[6] 6. It is to be further noted that one machine was returned to plaintiff on June 30, 1909, another on August 17, 1909, and the last two January 28, 1913. As we construe the contract, taking all its provisions into account, the minimum royalty for each returned machine was not earned for the full year in which return was made (as demanded by plaintiff), but only for such portion of the year as it was kept by defendant.

The judgment of the District Court is reversed, with directions to award a new trial.