Nov. Term,
1855.

SMITH
v.
THE CITY OF
MADISON.

---

SMITH v. THE CITY OF MADISON.

Though municipal charters are to be construed strictly, yet they are so to be construed as to carry into effect every power clearly intended to be conferred on the municipality, and every power necessary to be implied for the complete exercise of the powers granted.

The consequence of a particular construction of a statute is not to be considered, unless the reasoning from other sources is equally balanced.

By the charter of the city of *Madison*, approved *February* 14, 1848, the council have a right, by ordinance, to suppress bowling saloons, or to permit them to exist under such restraints as the council choose to impose.

Wednesday,
November 28.

APPEAL from the *Jefferson* Circuit Court.

STUART, J.—This was an action to recover back money alleged to have been unlawfully exacted by the city authorities from *Smith*.

It seems that in *December*, 1850, the city passed an ordinance taxing bowling saloons 50 dollars a year, and prescribing a penalty of not over 50 dollars a week against any one keeping, &c., in violation of the ordinance. *Smith* alleges that from *February*, 1851, till *June*, 1853, he was the keeper and owner of such a saloon in the city of *Madison*; that to avoid the risk of these penalties, he was compelled to pay, during the above period, a tax of 116 dollars and 50 cents. The ground assumed is, that the ordinance by virtue of which the tax was levied, is not authorized by the city charter, and is therefore void; and that the money exacted from the plaintiff under it, is recoverable in this form of action.

Demurrer to the complaint sustained, and final judgment in favor of the city. *Smith* appeals.

Counsel discuss two questions: 1. Was the ordinance valid or void? 2. If it was void, is the money paid under it, in the manner stated, recoverable?

If we should find, on examination, that the first question, namely, the validity of the ordinance, must be decided in the affirmative, it will not be necessary to spend any time on the second question; for, in that event, it will not be raised in the record. If the ordinance is valid, the tax for which it provides was lawfully enforced against *Smith*.

Premising that the powers conferred on the city by her charter are specific and limited, and should receive a strict construction, it is yet not perceived upon what principle the construction given to the charter should be so strict and literal as to defeat the whole machinery of municipal regulation. The strictness then to be observed in giving construction to municipal charters should be such as to carry into effect every power clearly intended to be conferred on the municipality, and every power necessarily implied, in order to the complete exercise of the powers granted.

The constitutional right of the legislature either to exercise or grant to the municipality the power to prohibit

Nov. Term, such establishments as bowling saloons, is very properly
1855.      not called in question by counsel.

Smith          The charter in force at the date of the ordinance, and
v.       during the whole period covered by *Smith's* license, is to
The City of
Madison.   be found in the local laws of 1848, p. 89, entitled "an act
to reduce the law incorporating the city of *Madison*, and
the several acts amendatory thereto, into one act, and
to amend the same," approved *February* 14, 1848. The
81st section declares it to be a public act. Of course the
Courts will take notice judicially of its several provisions.

The powers granted to the city are somewhat extensive,
and conferred with quite as much affluence of language
as is consistent with perspicuity. The charter contains
eighty-eight sections and covers thirty-two pages. The
eighth section, containing fifty-eight specifications, is that
on which the question argued at bar arises—particularly
the 11th specification, by which, in connection with the
introduction, "the common council is authorized, for and
within the city, to make and establish ordinances to sup-
press and restrain disorderly houses and groceries, houses
of ill fame, billiard tables, nine or ten pin alleys or tables,
and ball alleys, and to authorize the demolition and des-
truction of all instruments of gaming."

The point of the argument is, that the grant of a power
to suppress and restrain, does not expressly or impliedly
confer the power to tax and license.

The meaning of the word *suppress*, as here used, is
quite clear. The meaning of the word *restrain* may have
a wider latitude; and the manner in which these words
are used together, in this connection, may perhaps create
some doubt as to the intention of the legislature; for they
are applied not only to such saloons as that kept by
*Smith*, but to houses of ill fame, &c. Hence, it is inferred
*arguendo*, that the legislature did not intend by the words
*suppress* and *restrain*, to confer the power to license.

But this mode of reasoning is liable to two objections:
1. That the consequence of a particular construction is
not to be considered, unless the reasoning from other

sources is equally balanced; and 2. That such extensive powers of licensing even houses of ill fame, have, upon considerations of public policy, been conferred on municipalities. And it therefore leads to no absurd conclusion, that the legislature should confer even that power upon the city of *Madison*.

It is true, one of the primary meanings of restrain is to suppress. But we can not easily impute to the legislature such tautology, as that of using both these words in the same sense. It will be more in accordance with just interpretation, to give them severally such signification as will make both operative in the enactment. Accordingly, some of the significations of that word are, to keep in, hold in, abridge, limit, confine. Each of these definitions clearly imports that the thing shall be permitted to exist, only in a modified form; that it shall not be suppressed, but regulated.

The language of the act in other places, though not remarkable for precision, may yet throw some light on the use of the words in the 11th specification. Thus the 2d specification, section 8, confers the power "to regulate and license, or refuse to license, all taverns, coffee houses, ale, porter and beer shops," &c. So the 3d specification, "to regulate and license, or refuse to license, all places of amusement," &c. The 6th specification reads, "to *restrain* and *regulate* the running at large of cattle, horses, swine," &c. The 7th specification is still different: "to *prevent* and *regulate* the running at large of dogs," &c. In relation to horse-racing, cruel treatment of animals, riot, incumbering the streets and such like, the 12th, 13th and 18th specifications are explicit. The word *prevent* alone is used. The common council are authorized to *prevent* these things. The 42d specification gives, perhaps, the true key to the phraseology of the act. It runs, "to regulate, permit *or* prohibit sales at public auction in the streets," &c. Here it is left wholly discretionary with the common council, whether they shall permit auctions in the streets and regulate them, or whether they shall prohibit them. And this discretion runs through the whole

act. Wherever it is intended to be taken away, it is done by a single imperative word—as that the common council shall prevent, &c., in the 13th and 18th specifications. Thus, on the contrary, the words "to regulate and license, or refuse to license," in the 2d, 3d and 4th specifications, import this discretion. In the 6th specification, the word *restrain* is used in relation to cattle and horses running at large. There it is clearly implied that they shall be permitted to run at large, under such restraints and regulations as in the discretion of the common council may be proper. So, in the 11th specification, the common council may suppress *and* restrain nine and ten pin alleys, &c. The word *and* is here obviously used disjunctively. The common council may, in their discretion, restrain and regulate such places, or they may suppress them.

It seems the council did exercise that discretion. They deemed it proper to permit bowling saloons to exist in the city, and by way of restraint, amongst other things, imposed a tax of 50 dollars per annum. We are of opinion, that under the charter, the city had a right to exercise her discretion in the matter. She might suppress them entirely or permit them to exist under such restraints as she thought proper to impose. She elected to do the latter, whether wisely or not is not for us to say; we simply decide as to the question of power.

We are therefore of opinion that the tax was properly levied, and consequently that *Smith* has no right of action.

*Per Curiam.*—The judgment is affirmed with costs.

*W. M. Dunn* and *A. W. Hendricks*, for the appellant.

*J. G. Marshall*, for the appellee.