Scott *v.* City of Laporte.

---

## SCOTT ET AL. *v.* CITY OF LAPORTE ET AL.

[No. 19,878. Filed October 8, 1903. Rehearing denied January 27, 1904.]

APPEAL.—*Bill of Exceptions.—Documentary Evidence.*—Where an item of documentary evidence has been once set out in the bill of exceptions, it is sufficient, if a copy of the document is again read in evidence in another connection, to describe such item by words of general description, and show by an appropriate cross-reference where it is exhibited in the bill. *p. 36.*

MUNICIPAL CORPORATIONS.—*Limitations of Power to Contract.—Notice Must be Taken.*—All persons must take notice of the limitations upon the power of a municipality to contract that arise by virtue of the general law. *pp. 42, 43.*

Scott v. City of Laporte.

MUNICIPAL CORPORATIONS.—*Powers of Municipality.*—The powers conferred upon municipalities must be construed with reference to the object of their creation, namely, as agencies of the state in local government. *p. 43.*

SAME.—*Powers that may be Exercised by Municipality.*—A municipal corporation can exercise such powers only as are granted in express words, as are necessarily incident to the powers expressly granted, or as are essential to its declared objects and purposes.  *p. 43.*

SAME.—*Powers of Municipality.*—All reasonable doubts as to the existence of a power in a municipality must be resolved against it.  *p. 44.*

SAME.—*Implied Powers of Municipality.*—An implied power of a municipality must be directly and immediately appropriate to the exercise of the principal authority.  *p. 46.*

SAME.—*When Action of City Council not Directly Authorized.—Reasonableness. —Review.*—When the means employed by a city council has not been directly authorized by statute, such means must be reasonable, and the exercise of the discretion on the part of the governing body is subject to review by the courts.  *pp. 45, 46.*

TAXATION.—*Purpose is Public.*—The foundation idea of taxation is that the purpose is public, and a taking for any other purpose would be a disguised form of confiscation.  *p. 48.*

MUNICIPAL CORPORATIONS.—*Water-works.—Authority to Furnish Water to Inhabitants.*—Under subdivision 26 of ?3541 Burns 1901, a city is empowered to furnish water to its inhabitants in connection with the procuring of a supply of water for purely public purposes.  *p. 47.*

SAME.—*Ordinance.—Ultra Vires.—Supplying Water.—City has no Power to Guarantee Private Enterprise.*—A city ordinance authorizing a private corporation to construct and maintain a system of water-works for supplying water to the city and its inhabitants, binding the city for a term of twenty-one years to buy, at a fixed price, "at least" a certain number of gallons per month, such "rentals" to be paid to the trustees of the company's bondholders, and pledging the city's power of taxation that such rentals shall be paid, is unreasonable and *ultra vires,* and, at the instance of taxpayers, the city will be enjoined from receiving water under such ordinance and from making payments to the company out of its revenues.  *pp. 47-50.*

SAME.—*Validity of Ordinance.—Monopoly.*—An ordinance granting a franchise to a water company, and binding the city for a term of twenty-one years to buy from the company, at a fixed price, a large number of gallons per month, such monthly rentals to be paid to the trustees of the company's bondholders, and pledging the city's power of taxation that the rentals shall be paid, savors of monopoly, and is invalid.  *p. 59.*

From Laporte Circuit Court; *A. C. Capron,* Special Judge.

Suit for injunction by Emmet H. Scott and others against the city of Laporte and others. From a judgment for defendants, plaintiffs appeal. *Reversed.*

*Daniel Noyes* and *W. B. Biddle,* for appellants.

*W. C. Ransburg, E. E. Weir, Lemuel Darrow, M. R. Sutherland, C. H. Truesdell, H. S. Oakley* and *E. D. Salsbury,* for appellees. .

GILLETT, J.—Appellants, as taxpayers of the city of Laporte, commenced this action to enjoin the taking of certain steps by said city looking to the procuring of an additional water supply for its purposes and for the use of its inhabitants. Upon a final hearing an injunction was refused. A motion for a new trial was filed, assigning as grounds therefor that the decision of said court was not sustained by sufficient evidence and was contrary to law. This motion was overruled, and an · exception duly reserved by appellants, and said ruling is assigned as error.

Answering a preliminary contention of appellees' counsel, where a copy of an item of documentary evidence has been once set out in the bill of exceptions, it is sufficient, if a copy of the document is again read in evidence in another connection, to describe such item by words of general description, and show by an appropriate cross-reference where it is exhibited in the bill. *Miller* v. *Coulter,* 156 Ind. 290; *Henry* v. *Thomas,* 118 Ind. 23; *McFadden* v. *Wilson,* 96 Ind. 253; *Colee* v. ´*State,* 75 Ind. 511; *Smith* v. *Lisher,* 23 Ind. 500. There is no question involved as to the opinion of the reporter that the instrument before copied and the one afterward referred to are identical. The effective certification as to what the evidence was is that of the judge. *Hauger* v. *Benua,* 153 Ind. 642. If the clerk may pursue a like course in the preparation of his transcript, as our cases assert, much more ought it to be held that the trial judge may refer in a bill of exceptions to a prior portion of such bill. As the original bill

of exceptions is before us, thus preserving the original paging, there can be no element of uncertainty occasioned by the practice pursued in this instance.

The material facts in this case are substantially as follows: The city of Laporte is incorporated under the general law for the incorporation of cities, and it had a population of a little less than 8,000 prior to the year 1900. In 1898, and for many years theretofore, the city had owned a water-works system, two lakes being the source of supply. In August, 1898, the legal voters of said city had submitted to them a proposition to seek a water supply elsewhere, and the proposition was carried. Plans and specifications were thereupon prepared, calling for the building of a plant whereby the necessary water could be pumped and transported from a contemplated new source of supply to a reservoir that the city was to build adjacent to the pumping-station of said city. On July 24, 1899, the city, pursuant to advertisement, received bids for such plant, the lowest bid being $97,850, submitted by W. H. Wheeler. The valuation of the property in the city for taxation in the year 1899 was $3,972,169. Its total indebtedness at that time (not counting street assessment warrants, which would afterwards be retired by the sale of bonds, which would be liens against the abutting property) was $45,359.40. On each $100 of valuation the city tax levy for the year 1899 was $1.05, twenty cents of which levy was designated as on account of new water-works fund, and the balance was levied for other purposes. The bid aforesaid was brought to the attention of the common council through the report of a committee, and was made subject to acceptance "up to and until Tuesday, July 25, 1899, and not afterwards." The committee recommended that the common council "accept the proposition of W. H. Wheeler, of Beloit, Wisconsin, asking for a franchise," and that certain designated members of said council be appointed as a special committee "to draft a franchise in

accordance with this report to a company to be named 'The Laporte Water Supply Company,' to construct a water-works plant in accordance with the plans and specifications and profiles on file in the office of the city clerk." A resolution was thereupon adopted, appointing a special committee "to draft a franchise in favor of W. H. Wheeler & Company to construct a water supply plant" in accordance with such plans and specifications.

August 5, 1899, articles of association were filed for the organization under the laws of Indiana of a corporation to be known as the Laporte Water Supply Company. The capital stock of the corporation was fixed at $75,000, divided into 750 shares, of the par value of $100 each. The incorporators were W. H. Wheeler, E. P. Wheeler, and George M. Allen, whose subscriptions to said capital stock aggregated $40,000. It may be stated in this connection that $5,000 of said stock was not subscribed at any time.

On August 7, 1899, said common council adopted an ordinance entitled "An ordinance granting to the Laporte Water Supply Company the right to construct and maintain a system of water-works for the purpose of furnishing water to the city of Laporte and its inhabitants." Said ordinance provided that said company should have the right and privilege to erect, maintain, and operate a water-works system in accordance with said plans and specifications for the period of twenty-one years from and after the passage of the ordinance. It was further provided therein that the city would purchase of said company at least thirty million gallons of water per month, to be delivered in said proposed reservoir, to be paid for semiannually at the rate of three cents per thousand gallons, but the city was not to pay for any water not actually furnished. The ordinance also provided that the city would furnish said company the necessary live steam, delivered at sufficient pressure, to operate the machinery and pumps of said company to

their full capacity. Section five of said ordinance contains the following provision: "The city of Laporte hereby pledges the income and revenue of its water-works system for the payment of water rentals accruing hereunder, and in addition it agrees to annually, in due time, manner, and season, levy a tax sufficient to amply supplement said income and revenue, so that at all times the said water rentals shall be promptly paid. In the event that the company shall issue bonds, the city of Laporte agrees to pay the rentals herein provided for to the trustees for said bonds, as may be directed by the company." On August 14, 1899, the common council adopted a resolution providing for the employment of an engineer and assistants to supervise the construction of said water-works system by said company. On the same date said council provided for the sale of bonds by the city to the amount of $30,000, the proceeds to be used in the purchase from said company of 300 shares of its capital stock, which the mayor and city clerk were authorized to subscribe for.

On August 21, 1899, said stockholders, Wheeler, Wheeler, and Allen, signed and delivered to said city a writing, purporting to be a contract between said city and said stockholders, providing: (1) That the stock subscription of said city of $30,000 should be paid to a trustee to be expended on orders given during the construction of said plant, and for that purpose, after said other stockholders had expended a like sum in its construction; and (2) that said other stockholders should deposit their stock in said company with said trustee, and indorse the certificates therefor in blank, and authorize said trustee to deliver said certificates to the clerk of said city upon the payment to said trustee, for the use of said stockholders, within one year thereafter, of the sum of $10,000. On August 28, 1899, said company filed its written acceptance of said ordinance of August 7, 1899. On the same date, said Wheeler, Wheeler, and Allen contracted with the company

that they would construct said plant for $30,000 cash, 350 shares of the stock of said company, and the mortgage bonds of said company to the amount of $60,000. There was a change made afterwards, by which, in consideration of delays and extras, the contractors were to receive $5,000 additional, payable in the bonds of the company, and $5,000 additional, payable in the stock of said company. The sale of said city bonds and the investment of the proceeds thereof, as provided by said ordinance of August 14, was reported to the council September 25, 1899. On the next day a bond issue of the company to the amount of $65,000 was authorized by the stockholders and directors thereof, secured by a mortgage on the proposed plant of said company and by an assignment of its contract with the city of Laporte. At the same time the issue of bonds of said company was reported sold by the said Wheeler, Wheeler, and Allen to third parties, the proceeds to be paid to them, the said contractors. The plant was built under the supervision of an engineer employed by the city. On May 2, 1900, a special committee of the council reported that the plant was completed, and on the same date said council accepted a proposition of said Wheeler, Wheeler, and Allen to purchase 398 of their said shares of stock for $9,950. On June 11, 1899, a special committee of the council reported that it had consummated said transaction, and it appears that the remaining two shares of stock that were held by said contractors were turned over by them to certain citizens of Laporte, presumably for the benefit of the city.

It appears that said water company has never possessed any property other than such property as was vested in it by the transactions with it above recited. The defense offered testimony tending to show that there was no agreement among the members of the common council that the option of August 21, 1899, should be accepted by the city, and it further offered testimony to the effect that three

cents a thousand gallons was a reasonable price to pay for water under the circumstances.

This action was commenced August 26, 1899, and on October 18, 1900, a supplemental complaint was filed. It is unnecessary to make a detailed statement of the averments of these pleadings. The Laporte Water Supply Company was made a defendant, but the holders of the $30,000 issue of bonds by the city and of the water company bonds were not made parties.

It is contended by counsel for appellants that the evidence shows that the transaction as a whole was but an attempted evasion of article 13 of the Indiana Constitution, relative to municipal indebtedness, and should therefore be condemned, citing *Mayor, etc.,* v. *Gill,* 31 Md. 375; *Brown* v. *City of Corry,* 175 Pa. St. 528, 34 Atl. 854; *Ironwood Water-Works Co.* v. *City of Ironwood,* 99 Mich. 454; *Earles* v. *Wells,* 94 Wis. 285, 68 N. W. 964, 59 Am. St. 885; *Newell* v. *People, ex rel.,* 7 N. Y. 9; *Culbertson* v. *City of Fulton,* 127 Ill. 30, 18 N. E. 781; *Hebard* v. *Ashland County,* 55 Wis. 145, 12 N. W. 437; *City of Joliet* v. *Alexander,* 194 Ill. 457, 62 N. E. 861; *State, ex rel.,* v. *City of Helena,* 24 Mont. 521, 63 Pac. 99, 81 Am. St. 453; *Browne* v. *City of Boston,* 179 Mass. 321, 60 N. E. 934; *City of Springfield* v. *Edwards,* 84 Ill. 626; *City of Ottumwa* v. *City Water Supply Co.,* 119 Fed. 315, 56 C. C. A. 219, 59 L. R. A. 604.

The city practically owns the corporation that owns the addition to the water-works, subject to a bonded indebtedness of $65,000, and to obtain this equity the city has been compelled to invest $39,950, $30,000 of which was raised by a sale of the city's bonds. If the plant shall be finally paid for it will cost the city $104,950, aside from interest. It is true that the city has not engaged to pay the $65,000 bonded indebtedness of the water company—that is, *eo nomine*—but the ordinance of August 7, 1899, assumes to bind the city, in addition to furnishing the energy to pump

and transport the water, to pay $10,800 per year for twenty-one years as water rentals, which amount is to be paid to the trustees of the bondholders of the company, and in addition the ordinance assumes to hypothecate the water plant of the city and pledge the city's power of taxation that such fixed charges shall be met.

We are not at liberty, however, to view the transaction entirely from the standpoint of the city. A corporation has in fact been created, which has negotiated its securities, and it is not alleged that the purchasers or the holders of such securities had any notice of the option agreement of August 21, 1899, which it is to be borne in mind was not of record. We shall therefore assume that whatever the city was endeavoring to do in the use that it was making of the Laporte Water Supply Company, those who invested in the bonds of the city or the bonds of the water company had no notice of such purpose.

It is provided by statute that a city in the general class may become a part stockholder in a water-works corporation by subscribing to its capital stock, and may borrow money to pay its stock subscription. §3541, subdivision 26, §3614 Burns 1901. Counsel for appellants do not assail this statute, and therefore we assume its validity. Moreover, we find that the supplemental complaint proceeds on the theory that the $30,000 bond issue of the city is valid, since it charges that upon the sale of said bonds "the said city became indebted to the full amount of two per cent. of its taxable property, as ascertained by the last assessment for state and county taxes prior to the sale of said bonds."

We may assume that the $65,000 bond issue is a charge upon the physical property of the Laporte Water Supply Company, in view of the state of the record, but we may properly examine the claim that the city is bound to perform the terms of its ordinance respecting the quantity of water to be purchased from the company, since all persons must take notice of the limitations upon the power of a

municipality to contract that arise by virtue of the general law. *Platter* v. *Board, etc.,* 103 Ind. 360; *Shea* v. *City of Muncie,* 148 Ind. 14, and cases there cited.

The powers conferred upon municipalities must be construed with reference to the object of their creation, namely, as agencies of the state in local government. "A municipal corporation," says Mr. Justice Bradley, "is a subordinate branch of the domestic government of a state. It is instituted for public purposes only; and has none of the peculiar qualities and characteristics of a trading corporation, instituted for the purposes of private gain, except that of acting in a corporate capacity. Its objects, its responsibilities, and its powers are different. As a local governmental institution, it exists for the benefit of the people within its corporate limits. The legislature invests it with such powers as it deems adequate to the ends to be accomplished." *Mayor, etc.,* v. *Ray,* 19 Wall. 468, 475, 22 L. Ed. 164. See *Schneck* v. *City of Jeffersonville,* 152 Ind. 204.

The statute under which a municipal corporation is created is its organic act. Such a corporation can only exercise the following powers: First, those granted in express words; second, those necessarily implied in or incident to the powers expressly granted; and, third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Dillon, Mun. Corp. (4th ed.), §89, and cases there cited; *Muncie Nat. Gas Co.* v. *City of Muncie,* 160 Ind. 97, 60 L. R. A. 822; *Pittsburgh, etc., R. Co.* v. *Town of Crown Point,* 146 Ind. 421, 35 L. R. A. 684; *Kyle* v. *Malin,* 8 Ind. 34; *Smith* v. *City of Madison,* 7 Ind. 86. In *Spaulding* v. *City of Lowell,* 23 Pick. 71, Shaw, C. J., speaking for the court, said: "In aggregate corporations, as a general rule, the act and will of a majority is deemed in law the act and will of the whole, * * * as the act of the corporate body. The consequence is, that a minority must be bound, not only without, but against their consent. Such obliga-.

tion may extend to every onerous duty, to pay money to an unlimited amount, to perform services, to surrender lands, and the like. It is obvious, therefore, that if this liability were to extend to unlimited and indefinite objects, the citizen, by being a member of a corporation, might be deprived of his most valuable personal rights and liberties. The security against this danger is in a steady adherence to the principle stated, that corporations can only exercise their powers over their respective members, for the accomplishment of limited and well-defined objects."

The presumption is that any power has been withheld that is not expressed or fairly to be implied, and therefore all reasonable doubts as to the existence of a power in a municipality must be resolved against it. *Smith* v. *City of Madison, supra; Kyle* v. *Malin, supra; Pittsburgh, etc., R. Co.* v. *Town of Crown Point, supra; Lake County Water & Light Co.* v. *Walsh,* 160 Ind. 32; *State, ex rel.,* v. *Indianapolis Union R. Co.,* 160 Ind. 45, 60 L. R. A. 831; *Ravenna* v. *Pennsylvania Co.,* 45 Ohio St. 118, 12 N. E. 445; *Detroit Citizens St. R. Co.* v. *City of Detroit,* 110 Mich. 384, 68 N. W. 304, 35 L. R. A. 859, 64 Am. St. 350; *City of Corvallis* v. *Carlile,* 10 Ore. 139, 45 Am. Rep. 134; Dillon, Mun. Corp. (4th ed.), §89; Smith, Mun. Corp., §673; Cooley, Const. Lim. (6th ed.), 231; 20 Am. & Eng. Ency. Law (2d ed.), 1140. The general disposition of the courts of this country has been to apply to these corporations substantially the same rule that is applied to charters of private corporations. Cooley, Const. Lim. (6th ed.), 231; Smith, Mun. Corp., §673.

Even general and indefinite grants of power are subject to be controlled by the nature of the charter and the particular powers granted. *City of Winchester* v. *Redmond,* 93 Va. 711, 25 S. E. 1001, 57 Am. St. 822; *Mayor, etc.,* v. *Putnam,* 103 Ga. 110, 29 S. E. 602, 68 Am. St. 80; *Cook County* v. *McCrea,* 93 Ill. 236. And see, by way of illustration, *City of Logansport* v. *Humphrey,* 84 Ind.

467.   The following is a quotation from *Cook County* v. *McCrea, supra:* "But it is contended that there is an implied power to that end embraced in the provision conferring upon county boards power 'to manage the county funds and county business, except as otherwise specifically provided.' This can not be understood to give to county boards the absolute and unlimited power of management of county funds, where there is the absence of any specific provision of law to the contrary. It hardly means more, we think, than a power to manage the county funds and county business according to law." In *Rothrock* v. *Carr,* 55 Ind. 334—a case involving the construction of a statute relative to the powers of boards of county commissioners —this court said: "The words to 'make allowances at their discretion,' as used in the above section, mean to make allowances according to law, at their discretion." If an act that is done on behalf of a municipality can not be justified when tested by a consideration of the general nature of the charter and the particular powers granted, no argument of advantage, or even of necessity, in the particular instance, will suffice to beguile the court into becoming a party to the usurpation. To make considerations of this kind the basis for a judicial recognition of power "would lead," to adopt the language of the supreme court of Massachusetts, "to a latitude of construction in regard to corporate powers and duties which would be in a high-degree dangerous." *Anthony* v. *Adams,* 1 Metc. (Mass.) 284. The powers that are implied because they are essential to the declared objects and purposes of a municipal corporation are ordinarily few in number, and need not engage our attention here.

It is also clear that under the Indiana act relating to cities of the general class, where specific grants of authority have well marked the path of corporate privilege, there is little, if any, opportunity for difficulty in determining what is an authorized corporate end. Many perplexing questions

arise, however, as to the means that municipalities may adopt to effectuate their grants of power. We think that it may be laid down generally, however, that an implied power must be directly and immediately appropriate to the exercise of the principal authority. Smith, Mun. Corp., §673. If there are two ways of attaining an authorized municipal end, and both of such ways are proper, the governing body has a choice as to which of such means it will select; but where the means selected has not been directly authorized, such means must be reasonable, and the exercise of the discretion on the part of the governing body is in such cases subject to review by the courts on the point of reasonableness. *Champer* v. *City of Greencastle,* 138 Ind. 339, 24 L. R. A. 768, 46 Am. St. 390. Within the scope of authorized municipal purposes the courts will be careful to accord to municipalities authority enough fully to accomplish their granted powers, but it is enough to condemn a course that has been selected, where not plainly authorized by the legislature, that it involves a wide and unnecessary departure from municipal usage. For the purpose of illustrating this point, we quote the following from the case of *Spaulding* v. *Inhabitants of Peabody,* 153 Mass. 129, 10 L. R. A. 397: "Under the special acts whereby Boston was authorized to maintain street lamps, it could not have been held that the town or city was authorized to engage in the whale fisheries for the purpose of procuring oil. The intention was that the oil for the lamps should be bought as persons generally bought oil used for lights. Towns are authorized to raise money for the support and employment of the poor, but it could not reasonably be held that it was intended that towns should at public expense erect and maintain factories for the manufacture of all of the clothing which the poor might wear, or of all the implements which they might use. Towns are authorized to raise money for carrying pupils to and from the public schools, but this could not be held to authorize towns

to maintain a street railway or railroad. Towns are authorized to maintain public libraries, but this does not mean that they can maintain paper-mills and printing establishments for making books for the libraries. These are undoubtedly extreme examples, but they illustrate the necessity of a somewhat strict construction of the statutes relating to the powers of towns."

Subdivision 26 of §3541 Burns 1901 authorizes a city to construct works for furnishing the city with wholesome water, and the subdivision further provides that the common council may authorize a private corporation to construct such works. This subdivision, when taken in connection with some of the more general grants of power in other subdivisions of the same section, would authorize the city to obtain an element of such primal necessity as water for the use of its inhabitants. *City of Crawfordsville* v. *Braden,* 130 Ind. 149, 14 L. R. A. 268, 30 Am. St. 214; *Rushville Gas Co.* v. *City of Rushville,* 121 Ind. 206, 6 L. R. A. 315, 16 Am. St. 388.

Was the ordinance of August 7, 1899, above mentioned, a reasonable one? It in part purported to be a contract for the purchasing of water by the city for a period of twenty-one years, in quantities of at least thirty million gallons per month, a large part of which, as we judicially know, it would have to sell again if it were disposed of at all, and this surplus the city undertook to pay for whether it exceeded the needs of the city and its inhabitants or no. This element, together with the furnishing of energy by the city to pump and transport the water, and the undertaking to pay the rental to the trustees of the bondholders, make it apparent, upon the whole, that there was in effect an undertaking on the part of the city to stand sponsor for the whole transaction. Moreover, we find that in its practical working this plan will enable the water company, within the period of the contract, to retire a bonded indebtedness of $65,000. Of course, it is to be

presumed that a private business corporation is established with the expectation that it will yield an adequate return upon the money invested in it, but it would not ordinarily be expected that a third person would guarantee the expectation. Such transactions may not be unknown to the mercantile world, but the assumed underwriting of a financial project by a municipal corporation on behalf of a private corporation, in the absence of a statute clearly authorizing it, would certainly be *ultra vires*. A municipality can not loan its credit to purely private undertakings. *Clark* v. *Des Moines,* 19 Iowa 199, 87 Am. Dec. 423; Cooley, Const. Lim. (6th ed.), 262. Not only is the legislature wanting in power to delegate authority to municipal corporations except for public purposes, but the foundation idea of taxation is that the purpose is public, and a taking for any other purpose would at best be but a disguised form of confiscation. *Ottawa* v. *Carey,* 108 U. S. 110, 2 Sup. Ct. 361, 27 L. Ed. 669; *Loan Assn.* v. *Topeka,* 20 Wall. 655, 22 L. Ed. 455; *Cole* v. *LaGrange,* 113 U. S. 1, 5 Sup. Ct. 416, 28 L. Ed. 896; *Opinion of the Justices,* 150 Mass. 592, 24 N. E. 1084, 8 L. R. A. 487; *Opinion of the Justices,* 155 Mass. 598, 30 N. E. 1142, 15 L. R. A. 809; *Sharpless* v. *Mayor,* 21 Pa. St. 147, 59 Am. Dec. 759; *State, ex rel.,* v. *Osawkee Tp.,* 14 Kan. 418, 19 Am. Rep. 99; *Mather* v. *City of Ottawa,* 114 Ill. 659, 3 N. E. 216; *Attorney-General* v. *City of Eau Claire,* 37 Wis. 400; *State* v. *City of Eau Claire,* 40 Wis. 533; *Hanson* v. *Vernon,* 27 Iowa 28, 1 Am. Rep. 215; *Opinion of the Justices,* 58 Me. 590; *Allen* v. *Inhabitants of Jay,* 60 Me. 124, 11 Am. Rep. 185. As said by Appelton, C. J., in the case last cited: "All security of private rights, all protection of private property is at an end, when one is compelled to raise money to loan at the will of others, * * * for their own use and benefit, when the power is given to a majority to lend or give away the property of an unwilling minority."

The mere fact that a city makes an authorized contract with a private corporation that incidentally increases the latter's credit will not condemn the transaction. Here, however, the foundation of the transaction was illegal, and as it started in a step aside from corporate privilege, the extensive credit sought to be given, since it led in the direction of such divergence, only illustrates how far from the path marked out by the legislature the city has proceeded.

We do not doubt that the procuring of water for the use of the inhabitants generally of a city is a public service, although the service affects the inhabitants in their individual, rather than in their collective, capacity, and, as stated above, we do not doubt the power of cities under existing legislation in this State to furnish water to their inhabitants, at least in connection with the procuring of a supply of water for purely public purposes. We would not be understood either as intimating that with legislative authority a city might not reasonably aid a private corporation to enable it to furnish water to the city and its inhabitants. In a doubtful case much deference would be paid to a legislative declaration that a use is public, but it is not to be lightly implied that such a power has been granted to the cities of the State. As there is nothing in the statutes to lead to the conclusion that the grant necessary to uphold the act in question has been made, we need not consider the legislative authority; for, as was observed by Mr. Chief Justice Waite, in *Ottawa* v. *Carey, supra,* "no matter how much authority there may be in the legislature to grant a particular power, if the grant has not been made, the city can not act under it."

It is no answer to the objections that we have pointed out that the city of Laporte is the owner of practically all of the stock of the private corporation. The latter has in form executed an assignment of the city's undertaking of August 7, 1899, to the trustees of the company's bond-

holders, as well as of all else that it owns, by way of security, and, as a result of a sale on foreclosure, such undertaking, if valid, might, with the other property of the company, pass into the hands of a stranger, leaving the city, while bound to perform its contract, possessed of no property of the Laporte Water Supply Company except its corporate shell. It may be further suggested in this connection that the city was not the owner of even a majority of the stock in the water company at the time the ordinance was enacted, and it was denied upon the trial that it was intended at the time the option agreement was delivered that the city should purchase the balance of the stock. If the ordinance of August 7, 1899, was not valid when made, it is not valid now, and we can not treat it as valid now unless we are prepared to admit that if the city had not elected to exercise the option that it afterwards received, the ordinance would still have been valid.

It is our conclusion that the city was not bound to take water from the water company under the terms of said ordinance. The court below should have enjoined the city from receiving water under said ordinance, and should have further enjoined the city from making payments out of its own revenues on account of said undertaking.

Following the line of argument of appellants' counsel, the constitutional question suggested during the course of this opinion should have been first decided. As it is our duty, however, to avoid the consideration of a constitutional question where another ground is perceived on which the decision may rest, we have put our decision on the ground that the city exceeded its chartered powers in the particular mentioned.

Judgment reversed, and a new trial ordered.

## ON PETITION FOR REHEARING.

GILLETT, C. J.—Appellees have petitioned for a rehearing herein, and their counsel have filed able briefs in support of the petition. Their first complaint is that the case was decided upon a ground not formally urged by appellants' counsel. We are not advised of the absence of any averment in the complaint, or of any defect of proof, which would render the conclusion reached inadmissible, assuming its abstract correctness. The matter of fact on which our decision was based stood out upon the face of the proceedings, without and beyond dispute, and the only real difference between the position of the court and that of appellants' counsel was that we held that certain elements in the transaction constituted an unauthorized undertaking to stand sponsor for the success of the enterprise, while they contended that the transaction amounted to the creating of a debt. Having reached the conclusion we did as to the nature of the transaction, it was proper to consider as to the power of the municipality in the premises, and, if it were found that there was a want of power to enter into the contract, it was our duty not to permit ourselves to drift along the current of argument found in the briefs until we were confronted with the constitutional question. In the case of *Big Creek Stone Co.* v. *Seward,* 144 Ind. 205, where the cause had been reversed for a defect in the complaint not pointed out by the counsel who prosecuted the appeal, it was said on rehearing: "When an error is presented by the record, the case is decided upon the record and not upon the argument of counsel."

Our attention has been called by appellees' counsel to a number of sections of the statutes which it is claimed contain grants of power sufficiently broad to authorize a city to buy water for its use and for that of its inhabitants. We have no disposition to take issue with counsel on the points thus made, since they are not involved in the ques-

tion in hand. Our decision rests upon the proposition that it is not competent for a city, in contracting for a supply of water for its use and also for that of the private water consumers therein, to bind itself for a term of years to buy, at a fixed price, at least a certain number of gallons per month.

The statement in the opinion that the court judicially knew that the city of Laporte would be compelled to sell a large part of the thirty million gallons of water that it had contracted to buy each month, had reference, not to the needs of the city and its inhabitants, but to that of the city proper; and the purpose of the statement was to guard against the inference that we were holding that the authorities might not determine the quantity of water that the city would consume for its own purposes. We were endeavoring to show by such statement that the purchase was for the use of private consumers as well—a use that, while it might exceed the amount the city had to sell, might also be much less, depending upon the population of the city in the future, the necessities of the private consumers, and their disposition to extend or refuse their patronage to the city in the matter of the purchase of water. But the observation as to our judicial knowledge was really unnecessary, since, as before shown, the title of the grant recited that the water was to be furnished "to the city of Laporte and its inhabitants."

As the opinion affirmatively discloses, what was therein said as to the want of power in a municipality to tax for a private purpose had no reference to the power of the city to make a contract which would secure to it and its inhabitants the means of obtaining a sufficient supply of wholesome water, but to the attempted equipping of a private corporation with a credit by a means unauthorized by law. Since the case turns on this proposition, we shall examine it somewhat more at length; first considering the matter as one of statutory interpretation and construction.

As said by Judge Dillon in his authoritative work on municipal corporations (4th ed., §39): "When it is remembered that the charter of such a corporation is its constitution, and gives to it all the powers it possesses (unless other statutes are applicable to it), its careful study, in any given case, is indispensable to an understanding of the nature and extent of the powers it confers, the duties it enjoins, and liabilities it creates. The construction of its various provisions, and the determination of the relation which these bear to the general statutes of the state—how far the charter controls, or how far it is controlled by other legislation, are often among the most difficult problems which perplex the lawyer and the judge. The study of a question of corporation law begins with the charter; but it must oftentimes be pursued into the constitution, the general statutes and legislative policy of the state, and after this into the broad field of general jurisprudence."

The express or direct powers of the city relative to the obtaining of a supply of water, so far as our examination has revealed, seem to relate to the constructing and establishing of water-works by the city, or to authorizing a private corporation so to do. We do not mean to intimate that the above courses are the limit of the powers of cities of the general class in obtaining water. To do so would be to leave out of account the implications which may flow from some of the more general grants of authority. Just the precise breadth of the legislative grant to cities of the general class in the matter of obtaining water need not now be determined, but obstacles and difficulties in exercising powers fairly to be implied can not operate to enlarge the authority as applied to a particular instance. *Grand Rapids, etc., Power Co.* v. *Grand Rapids, etc., Gas Co.,* 33 Fed. 659.

As to the question whether a city can contract to buy a definite quantity of water at a fixed price, to be furnished for its use and that of its inhabitants during a term of

years, it is first to be considered that such a course has no direct authorization. The maxim, *expressio unius est exclusio alterius* has been frequently applied in the construction of grants of power to corporations, municipal and private. *First Presbyterian Church* v. *City of Ft. Wayne,* 36 Ind. 338, 10 Am. Rep. 35; *English* v. *Smock,* 34 Ind. 115, 7 Am. Rep. 215; *Gas Light, etc., Co.* v. *City of New Albany,* 156 Ind. 406; *Mayor, etc.,* v. *Ray,* 19 Wall. 475, 22 L. Ed. 164; *People, ex rel.,* v. *Utica Ins. Co.,* 15 Johns. 358, 383, 8 Am. Dec. 243; *New York, etc., Ins. Co.* v. *Ely,* 2 Cow. 678; *City of Ft. Scott* v. *Eads Brokerage Co.,* 117 Fed. 51, 54 C. C. A. 437; *Farmers Nat. Bank* v. *School District,* 6 Dak. 255, 42 N. W. 767. And see *City of Logansport* v. *Dykeman,* 116 Ind. 15; *Woodford* v. *Hamilton,* 139 Ind. 481; Broom's Legal Maxims (7th Am. ed.), *664. This rule, however, is not necessarily to be applied to the extinguishment of powers implied from general grants, in cases where the specific provision is but a grant of discretionary authority, that, upon the whole, does not appear to have been intended to exclude a power to be implied from a more general grant. *Clark* v. *City of South Bend,* 85 Ind. 276, 44 Am. Rep. 13. Whether the general grant is to be treated as limited by the direct legislation, may depend upon a number of considerations as to whether the express power is couched in such terms as to make it fairly inferable that the statute was intended to establish the only method, whether such power seems reasonably adequate to meet the necessities of cities generally, upon the language of the general grant from which another method is sought to be implied, and upon the consideration as to whether the latter method is reasonable and fairly calculated to attain an authorized municipal end. See 20 Am. & Eng. Ency. Law (2d ed.), 1142. Mr. Tiedeman says: "Express provisions of charter or statute modify the inherent or conferred general power to contract, and consequently deserve the carefulest consideration, in

determining the scope of the general powers. And, furthermore, too much emphasis can not be given to the rule, that any power to contract, whether conferred upon or inherent in a corporation, does not authorize the making of every sort of contract; but of such only as are fit, usual and necessary, to enable the corporation to carry into effect the purposes for which it was chartered." Tiedeman, Mun. Corp., §163.

Section 3616 Burns 1901, which is sometimes referred to as the equivalent of a general welfare clause, seems to be designed to enlarge the legislative powers of cities, rather than their contractual powers, except as the contractual element may exist in general ordinances, the provisions of which have been accepted by third persons. See *Citizens Gas, etc., Co. v. Town of Elwood,* 114 Ind. 332. But ordinances passed under a general welfare clause must be reasonable, and not out of accord with the charter and recognized municipal usage.

As to the question whether the power to obtain water for the use of the city and its inhabitants can be implied, we should approach the question with the supposition that the legislature had not intended to deny to the cities of the State enough power to meet adequately the demand for an element so essential to the well-being of a municipality as water. We only refer to the grant of express powers as evincing the fact that the agreement under consideration does not amount to the same thing, in its essence, but involves a wide and unnecessary departure therefrom. In this connection, it is material to consider the matter of usage. Suppose that the city were authorized, under one or more of its grants of power, to purchase water; is it not still to be implied that it is not authorized to buy in a manner wholly contrary to general municipal practice? In Grant, Corp., 41, it is stated: "A settled usage will even go a great way to control the words of a charter." Judge Dillon, writing more at length upon the subject,

says: "General and long-continued usage is not without its importance, and usage of this character may be resorted to in aid of a proper construction of the charter or statute, but no further. If the language be uncertain or doubtful, a uniform, long-established, and unquestioned usage will be regarded by the courts in determining the mode in which powers may be exercised, and to a reasonable extent in determining the scope of the powers themselves." Dillon, Mun. Corp. (4th ed.), §93. See, also, *Rex* v. *Mayor, etc.,* 1 Mau. & Sel. 101; *Frazier* v. *Warfield,* 13 Md. 279, 303; *Opinion of the Justices,* 155 Mass. 598, 30 N. E. 1142, 15 L. R. A. 809; 20 Am. & Eng. Ency. Law (2d ed.), 1141.

Counsel for appellees assert that we are not authorized to review the acts of the common council of Laporte on the ground that they are unreasonable. While this may be true when the council is acting within its chartered authority, yet the limitation must exist that a contract must involve a method that is directly and immediately appropriate to the attainment of proper municipal purpose, if the right is asserted as an implied power, for otherwise the implication fails. Many illustrations under indefinite grants of power might be used in support of this—as that a municipal corporation can not become a surety, that it can not expend money for objects foreign to the purposes of its organization, that it can buy property only for municipal requirements, and can not issue commercial paper. "The power to make contracts, and to sue and be sued thereon, is usually conferred, in general terms, in the incorporating act. But where the power is conferred in this manner it is not to be construed as authorizing the making of contracts of all descriptions, but only such as are necessary and usual, fit and proper, to enable the corporation to secure or to carry into effect the purposes for which it was created." Dillon, Mun. Corp. (4th ed.), §443. And see *City of LaFayette* v. *Cox,* 5 Ind. 38; *Eichles* v. *Evans-*

*ville St. R. Co.,* 78 Ind. 261, 41 Am. Rep. 561. Even the legislature can not authorize a municipality to purchase property as a mere matter of convenience to its inhabitants.

In *Opinion of the Justices,* 155 Mass. 598, 30 N. E. 1142, 15 L. R. A. 809, the constitutional authority of the legislature to authorize cities and towns to purchase coal and wood for the purpose of resale was denied, on the ground that the conducting of such a business was not a public service which could be authorized by the legislature. The court distinguished its earlier opinion to the legislature *(Opinion of the Justices,* 150 Mass. 592, 24 N. E. 1084, 8 L. R. A. 487), in which it was held that that body might authorize municipalities to erect gas and electric light works, on the ground that such undertakings were of a public character, since it would not be practicable for the inhabitants of cities and towns to furnish gas or electric light for themselves.

For its own use a city might perhaps contract to take a fixed quantity of water, since the extent of its use might be fairly capable of ascertainment. But how is it to be reasonably approximated in advance how much water the inhabitants of a city will buy? If the calculation as to the needs of the city and its inhabitants has been too liberal, must the city nevertheless pay for water that can not be used? If a city admits to its streets a corporation organized to furnish water, to supply that element to the inhabitants, it may fix maximum rates for the latter's benefit, but the city is not at any loss if patronage is refused. It is true that a lack of patronage might occasion a loss if the city were the owner of the works, but in the latter instance, besides having express legislative authority for the undertaking, it would, as owner, have the chance of profit as compensation for such chance of loss. It would be one proposition if the city had made a contract to pay a reasonable hydrant rental, and to pay for such water

as it sold to its inhabitants, but it is a very different proposition for a city to throw itself into the breach by undertaking to furnish a market for thirty million gallons of water a month whether it shall be able to sell the overplus or not. This is the matter that we especially had in mind in asserting in the principal opinion that the transaction was' an assumed underwriting of a financial project by a municipal corporation on behalf of a private corporation.

Counsel for appellants suggest that our statement that by means of said contract the Laporte Water Supply Company would be able to retire its bonded indebtedness of $65,000 is too far within the bounds of truth to convey an adequate idea of the possibilities of the transaction. They suggest that the aggregate of these instalments for the whole period of twenty-one years is $226,000, and that the instalments for seventeen years, the period required for the maturity of all the bonds, would amount to $183,-600. Of course it is possible to make out too good a case. It is evident that if the city retires the bonds as they mature, which will require, with interest, if paid at maturity, $95,975, it will be the owner of the plant. If, however, the city should default, and the property should be lost through foreclosure, then the municipality would be burdened for a term of years with the duty (the contract being enforceable) of raising, by such means as possible, the sum of $10,800 a year for water purchased by it. If it be said that the transaction is shown by the evidence to be one that the city, if it faithfully applies the revenue derived from water rentals, may reasonably expect to be able to meet, the answer is that the city can not, without legislative authority, enter into speculative transactions. This is no less than a contract in the nature of a suretyship—"a contract which carries with it a lesion by its very nature." Dillon, Mun. Corp. (4th ed.), §471; *Louisiana State Bank* v. *Orleans Nav. Co.,* 3 La. Ann. 294;

*Greenville Water-Works Co.* v. *City of Greenville* (Miss.), 7 South. 409.

A further objection to the undertaking under consideration is that it savors of monopoly. It has been many times held, in language strongly evincing the prejudice of the courts against monopolistic agreements, that it is not competent for a city to grant the exclusive right to furnish light or water to its inhabitants. *Indianapolis Cable St. R. Co.* v. *Citizens St. R. Co.,* 127 Ind. 370, 8 L. R. A. 539; *Westfield Gas, etc., Co.* v. *Mendenhall,* 142 Ind. 538; *Crowder* v. *Town of Sullivan,* 128 Ind. 486, 13 L. R. A. 647; *Citizens Gas, etc., Co.* v. *Town of Elwood,* 114 Ind. 332; *Washington Toll Bridge Co.* v. *Commissioners, etc.,* 81 N. C. 491; *Thrift* v. *Elizabeth City,* 122 N. C. 31, 30 S. E. 349, 44 L. R. A. 427; *Altgelt* v. *City of San Antonio,* 81 Tex. 436, 17 S. W. 75, 13 L. R. A. 383; *City of Brenham* v. *Brenham Water Co.,* 67 Tex. 542, 4 S. W. 143; *Birmingham, etc., St. R. Co.* v. *Birmingham St. R. Co.,* 79 Ala. 479, 58 Am. Rep., 615; *Norwich, etc., Co.* v. *Norwich City Gas Co.,* 25 Conn. 19. Here we find that the city has entered into an undertaking which, if held valid, would morally coerce it to refuse to permit competition so long as any doubt existed as to whether, notwithstanding competition, it could dispose of the excess of water over and above its own needs. If a city has become a part stockholder in a water-works plant, as provided by statute, it may, if it owns a majority of the stock, so regulate water rents as to make them reasonable, and, if it loses such property by foreclosure, it may still invite competition for the supply of its inhabitants; but here, without legislative authority, the contract purports inexorably to bind the city to pay three cents for each thousand gallons of water furnished and to take thirty million gallons of water per month for the term of twenty-one years; and if the corporation passes into other hands the city must

continue, as a defensive measure, under all probable circumstances, to deny to its people for the entire period the right to test the market by inviting terms less burdensome than the city is required to exact to make itself whole.

We think that appellants were entitled to maintain injunction. It was the only prompt, direct, and efficacious remedy to prevent the consummation of an *ultra vires* act, which contingently threatened appellants as taxpayers. The jurisdiction of equity over cases of this general nature is a growing one in code states, where law and equity are administered in the same court. We think, too that injunction can be maintained on a principle analogous to that involved in a stockholder's bill. Dillon, Mun. Corp. (4th ed.), §§908-916. See *Adams* v. *City of Shelbyville,* 154 Ind. 467, 49 L. R. A. 797, 77 Am. St. 484, and cases cited.

We have given a very careful consideration to the learned briefs submitted on behalf of appellees' counsel, but their arguments have not led us to doubt the correctness of our original opinion.

The petition for a rehearing is overruled.